## John Straiton *v.* The New York and New Haven Railroad Company.

A passenger, having procured a ticket for Montreal, at the office of the New Haven Railroad Company, in New York, instead of giving his valise into the charge of the agent of the company, and receiving their check therefor, proceeded, with his valise in his own charge, to New Haven, the terminus of the company's road, where he delivered the valise to the agent of a connecting railroad company, who checked it through to another point on the route. It appeared that a joint committee, appointed by the various lines between New York and Montreal, regulated the time of running their several trains, each company, however, paying its own expenses, without reference to the others. The ticket was a strip of paper, divided into coupons, whereof one was to be detached and surrendered to the conductor of each line on the route. Through tickets for the entire distance, or for intermediate places, were sold in New York, by one general agent, appointed by each company separately. The proceeds of sales of through tickets were distributed to the several companies each month, according to the respective amounts of their established rates of fare. *Held*, that the New York and New Haven Company, whose road terminated in those cities, was not liable, in an action, for the loss of the valise.

*Held*, further, that the several companies, on the route from New York to Montreal, were not jointly liable as copartners, for the negligence of the special agents of one of them.

The decision in *Champion* v. *Bostwick*, 18 Wend. 175, cited and distinguished from this case.

This was an appeal from a judgment of the Marine Court, in favor of the assignee of a passenger, against the New York and New Haven Railroad Company, for the value of a valise. The facts will be seen in the opinion.

*D. J. Lyons* and *Samuel Jones, Jr.*, for the appellant.

*John H. McCunn* and *James Moncrief*, for the respondent.

By the Court. Daly, J.—This judgment cannot be sustained. Dudderidge paid his fare for Canada at the defendant's depot in New York, the only place where through

tickets can be purchased for Montreal, and received a coupon, a long ticket, or series of tickets, on one slip of paper, for various points or *termini* along the route, each of which, as the name imports, can be cut off or severed from the rest. Instead of giving his valise to the baggage master at New York, and getting it checked to the point to which he had paid, he took it with him in the cars, though told he must put it in the baggage room; and upon arriving at New Haven, he inquired of the baggage master that had come in the train from New York, who directed him to a person that would check his baggage to Northfield. It appears that he intended, when leaving New York, to stop for a while at New Haven, and for that reason, probably, took his valise with him in the cars. On arriving at New Haven, it would seem that he changed his mind, and concluded to go on to Northfield, in Vermont, that being the place where the cars stopped the first night. He had his valise checked by a baggage master in New Haven, for Northfield. There are two Northfields on the same route, one in Massachusetts and one in Vermont, and it does not appear that he informed the baggage master, who gave him the check at New Haven, to which of the places he was going. He states merely that he had it checked for Northfield, and upon arriving at North-field, in Vermont, that night, he inquired for the valise, and it could not be found.

This witness' testimony was of the most unreliable kind. He first swore that he delivered his baggage to the baggage master of the New York and New Haven train—that he de-manded his valise when he arrived at New Haven, and was told by the baggage master that they were responsible if it could not be found—that he showed the check to the bag-gage master at New Haven, and asked him if the same check would be good for going any further, and was told that it would answer; and yet, upon his cross-examination, he swore that he took the valise with him into the cars at New York, and had it checked by a baggage master at New Haven. Taking his last statement to be the true one, his

remedy, or the remedy of his assignee, for the recovery of the value of the valise, is against those for whom the baggage master that received it at New Haven was acting. The defendants' road terminates at New Haven. They have a baggage master at that place, but he does not check baggage further. Those who check baggage further are baggage masters of other trains or roads, and to a baggage master of one of these trains Dudderidge must have delivered his valise. The defendants connect with the lines to Northfield, in Massachusetts, and in Vermont, and with the various lines through to Montreal; but this would not render them responsible for property never received by the agents or servants of their line, but entrusted to the servants or agents of a line with which they connected. For the convenience of passengers, an arrangement is entered into between the various lines from New York to Montreal, to connect regularly. The several companies have a committee, who have charge of the general arrangement of the trains. Tickets are sold at the defendants' depot, in New York, for the entire route or intermediate places, under the direction of a general agent, paid by the several companies, who advertises under his own name, the defendants merely advertising to connect. The rate of fare is different on the different roads, and each has its own ticket, on the same piece of paper with the other, so cut that it can be taken off at the road where it is to be delivered, and each company receives its own proportion of the whole fare or passage money, at the close or at the beginning of every month, the defendants paying over to the other companies all but one proportion. There is nothing in an arrangement like this to constitute the different companies partners for the transportation of passengers or baggage, so as to render the defendants liable, in common with the others, for the loss of this valise. The arrangement may be beneficial to them as well as to the public, inasmuch as by facilitating travel it may tend to increase it, but that would not create that joint interest, that community in profit and loss, which is essential to the existence of a partnership. In *Cham-*

*pion* v. *Bostwick*, 18 Wend. 175, several stage proprietors, who maintained a continuous line of stages between Utica and Rochester, were held to be partners. Each partner furnished, at his own expense, stages, horses and drivers for his part of the route, and all the passage money received for running over any part of the route was brought into a general fund, from which the tolls for the whole route were first paid, and the residue was divided among the several proprietors, in proportion to the distances run by each. They were held to be partners, because the division of the passage money, after the payment of the tolls, was a division of the profits of a joint concern, and because the fare was divided in proportion to the number of miles run, without reference to the amount of moneys received on each section, as, for instance, the proprietor having the shortest route might carry the greatest number of passengers and receive the largest amount of fare, and yet his share of the common earnings would be less than the proprietor that run a longer route, the effect of which was to give those who run the line where there was the least travel a portion of the passage money of other parts of the route, as an inducement to them to combine for the common benefit of all. "The case would be entirely different," said the chancellor, in delivering the opinion of the court, "if each stage owner was to receive and retain the passage money earned on his part of the line, and to sustain all the expenses thereof, and was only to act as agent of the others, in securing the passage money for them for the transportation of passengers over other parts of the line. In that case there would be no joint interest, and no liability to third persons as partners." In the present case, each of the railroad companies receives and retains the passage money earned on its part of the route; and it differs only from the case put by the chancellor, in the circumstance that the different companies, in addition to acting as agents for each other, united in the employment of a general agent in New York, to watch over their mutual interests, superintend the sale of tickets for the different parts of the route,

and attend to the general details of the arrangement; but this circumstance need not, in my judgment, establish such a joint interest in the transportation of passengers and baggage as to render one company liable for the loss of baggage never received by it, but delivered to and lost by another. The valise in question never came into the custody of the defendants or their agents, and they are not responsible for its loss.

Judgment reversed.