[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 365 
It is very clear, from the facts found by the court, that the plaintiff has a good cause of action for the loss of the baggage of his assignor, and the only question *Page 367 
is whether he has sued the right party. We have been asked to place the decision in favor of the defendant, upon the ground that it is a Connecticut corporation, and that the courts in that State have decided that it had no power to contract for carrying passengers and baggage or freight beyond the line of its road; and if such is deemed to be the contract in this case, it isultra vires. (22 Conn., 1, 502; 33 id., 179.)
Although, in the view we take of this case, it is unnecessary to pass upon this point, it is proper to suggest that, for obvious reasons, we should be disinclined to accede to this position. It is well settled in this State that a railroad corporation may bind itself, by contract, beyond its line. (45 N Y, 514; 22 id., 269; 4 Seld., 37; 17 N.Y., 306.)
When the defendant sought and obtained permission of the legislature to continue its line into and transact business in this State, it must be deemed, as to its contracts made here, to possess the powers and be subject to all the liabilities of similar corporations created by this State, as adjudicated by our courts. It should not be permitted to make a contract valid here and enforcible according to our decisions, and then, when its interests dictated, set up the decision of Connecticut, holding a want of power as an excuse for its violation. All obligations of comity are fully discharged in permitting the defendant to build its road and transact its business in this State upon the same footing as like corporations created here. The decisions of Connecticut are exceptional to the general current of authority upon this subject, and in 33 Conn., 180, before cited, I infer from the opinion that the courts in that State are contemplating the propriety of modifying their former decisions "for the sake of uniformity."
We must assume that the defendant had power to contract to carry the plaintiff's assignor and his baggage to Sheffield, which was off from their road and on the Housatonic railroad.
The precise question is whether the defendant did so contract, or rather whether the court was justified in holding from the admitted and undisputed facts that such a contract was not proved. The defendant received the usual fare from New *Page 368 
York to Bridgeport on its road, and also the fare over the Housatonic road from Bridgeport to Sheffield, in one sum, and gave the person applying two tickets printed together, but easily detached, one purporting on its face to be the defendant's ticket from New York to Bridgeport, and the other the ticket of the Housatonic company from Bridgeport to Shefield, the latter containing a notice to change cars at Bridgeport; and the defendant also checked the baggage to Sheffield with a check, a duplicate of which was delivered to the owner, marked H.R.R., indicating that it was a check of the Housatonic railroad. It appears, affirmatively, that the baggage was properly transferred by the defendant's employes at Bridgeport to the latter railroad company, and was destroyed while in its possession, under circumstances which render it liable for its value as a common carrier. The facts proved are not merely consistent with an agency on the part of the defendant to sell the Housatonic tickets, but we think they fairly imply such agency. The line was not a continuous railroad route, the cars of the defendant did not pass over the Housatonic road, and there was no fact proved tending to show that the defendant assumed to contract to Sheffield, except the sale of the separate tickets, the receipt of the fare and the use of the Housatonic check. The facts import an agency, and not a contract as principal, and the obligations of the parties are the same as though the tickets had been purchased at the offices of the respective companies. There was no community of interest between the two companies, and it does not appear that the defendant derived any pecuniary benefit from the transaction. The stipulation and finding is that the arrangement to sell tickets was for the mutual convenience of passengers and companies. It is obvious that the convenience of passengers would be promoted in saving the care and trouble of rechecking baggage and purchasing a ticket at Bridgeport, and some care and labor would be also saved by the companies. The finding of convenience repels the idea that the arrangement was for a pecuniary or other purpose. The inference is that the two *Page 369 
companies exchanged tickets, and each sold as agent of the other, and furnished the other with checks to be used as occasion required. The circumstance that the tickets were printed upon the same paper does not change the presumption; that was formal and for mere convenience. The face of each ticket spoke for itself. One was the defendant's ticket, and the other was a Housatonic ticket, and persons purchasing such tickets would not infer that the defendant was operating the latter road, or had any other arrangement than an agency to sell tickets, and the use of a check of the latter road would confirm rather than weaken the inference. If the check had been the defendant's, stamped from New York to Sheffield, there would have been force in the argument of the plaintiff's counsel likening it to a bill of lading issued by the defendant from the former to the latter place, but we do not intend to say what the legal effect would have been. We only intend to decide this case. The importance to the public of holding the first company liable was pressed upon us upon the argument. It was conceded that it is competent for one company to sell tickets as the agent of another, in which case the company selling would not be liable where it appeared, as in this case, that the injury was caused by the neglect of another company. We can see no propriety in straining the rules of law or overturning ordinary presumptions of fact upon the supposed ground that the public will be benefited thereby. It is conceded that a notice upon the ticket, that the defendant acted as agent in the sale of the Housatonic ticket, would have relieved it of responsibility. The effect, therefore, of a decision against it, instead of benefiting the traveling public, would only lead to a slight change in the form of the tickets.
The case of Quimby v. Vanderbilt (17 N.Y., 306) was very much relied upon by the counsel for the plaintiff. This court held in that case that separate tickets were not such contracts as precluded parol evidence that the contract was in fact entire. DENIO, J., said, "they are quite consistent with a more special bargain," and added, *Page 370 
"we do not say that the receiving of separate tickets for the different lines is not evidence of some weight upon the question whether the contract was entire, but we hold that it does not come within the rule which excludes parol testimony respecting a contract which has been reduced to writing." In that case there was positive evidence of a verbal contract from New York to San Francisco for a specified sum in gross, and there were various facts and circumstances tending to prove that the contract was entire on the part of the defendant. I agree that a contract might be shown independent of the tickets, and it would be competent to show that the tickets were delivered in pursuance of such contract, and it is unnecessary to say that the tickets would be inconsistent with proof of an entire contract. Here there was nothing proved but the sale of the tickets, the use of the check and the receipt of money; and in holding that, from these facts and that the arrangement was for convenience, the presumption is an agency to sell the Housatonic tickets, we do not collide with anything said or decided in the case referred to. In the case of Hart v. The Rensselaer and Saratoga R.R.Co. (8 N.Y., 37), the defendant was the last of three connecting railroads between Whitehall and Troy, and was held liable upon the ground that the defendant's agents received the baggage at Whitehall and had charge of it through to Troy. The separate tickets were not material. In Weed v. Saratoga and SchenectadyR.R. Co. (19 Wend., 534), the defendant contracted to Albany and ran its cars the whole distance, but a part of the way over the Mohawk and Hudson River railroad. In Cary v. Cleveland andToledo Railroad Company (29 Barb., 35), where the circumstances were similar to those in this case, the court held, upon the point as to a through contract, that it was a question of fact for the jury, and as no request was made to submit it, the decision of the court was not erroneous. In the recent case ofBurnell v. The N.Y.C.R.R. Co. (45 N.Y., 184), the ticket and check were from Palmyra to New York, and the contract was therefore held to be a through contract and *Page 371 
the defendant liable for the negligence of the Hudson River Railroad Company. Each case must depend upon its own facts, but I have been unable to find any authority in this country which holds that the facts in this case constitute in law a contract on the part of the company selling the tickets for the entire route. The decided tendency of the authorities is the other way. (Knight v. Portland, S. and P.R.R. Co., 56 Maine, 234;Brooke v. Grand Trunk R. Co., 15 Mich., 332; 2 E.D. Smith, 184; Root v. Great Western R. Co., 45 N.Y., 524.)
We think the decision of the Special Term was warranted, and that the judgment must be affirmed.
All concur.
Judgment affirmed.