JAMES TALCOTT, Appellant, *v.* THE WABASH RAILROAD COMPANY, Respondent.

1. CARRIERS — RAILROADS — QUESTION OF FACT AS TO CONTRACT FOR THROUGH TRANSPORTATION OF COMMERCIAL TRAVELER'S SAMPLES AS EXTRA BAGGAGE, OVER CONNECTING LINES. When the baggage agent, at its Chicago station, of a railroad company owning and operating a road to Detroit, and there connecting with a series of roads to New York, knows that certain trunks, accompanied by a passenger holding a coupon ticket issued by his company for passage from Chicago to New York, contain commercial traveler's samples, and demands and receives from the passenger, desiring to have them checked to New York, compensation for their transportation to that place as extra baggage, and gives the passenger a check stamped with the name of his company, bearing the words "From Chicago to New York," and the trunks are shipped, and are destroyed by fire while in transit, on another road, proof of these facts, in an action by the passenger's employer to recover from the baggage agent's company damages for the loss of the merchandise in the trunks, raises a question of fact as to whether that company agreed, aside from the contract to transport the passenger, for a new and independent consideration, to transport the trunks containing the merchandise ; and if, in such state of case, a nonsuit is granted as to such cause of action, it constitutes reversible error.

2. FINDING OF NO CONTRACT FOR THROUGH TRANSPORTATION ON COUPON TICKET, FATAL TO RECOVERY FOR LOSS OF PERSONAL BAGGAGE ON ANOTHER ROAD. The facts that a person, who has paid through fare to the terminus of connecting railroad lines, and received a coupon ticket

to that place from the first of the connecting companies, knew what a coupon ticket meant and intended to purchase a ticket that would take him over connecting lines, warrant the inference of notice to him, even if the name of the company was not correctly given, of a statement at the head of the ticket, that the company "selling this ticket" acted "as agent," and that it did not intend to become "responsible beyond its own line," and tend to raise a question of fact as to whether the contract was for through transportation or not; and a finding on that question in the negative prevents a recovery and calls for the dismissal of a complaint against the company which sold the ticket, as to a cause of action for damages for personal baggage of the passenger, carried free as an incident of the ticket and destroyed by fire on another road.

*Talcott* v. *Wabash R. R. Co.*, 89 Hun, 492, modified.

(Argued January 23, 1899; decided June 13, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered November 25, 1895, affirming a judgment in favor of defendant, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Charles E. Hughes* and *Lyman B. Bunnell* for appellant. The Wabash Western Railway Company contracted to carry the property in question from Chicago to New York. (*Burtis* v. *B. & S. L. R. R. Co.*, 24 N. Y. 269; *Condict* v. *G. T. Ry. Co.*, 54 N. Y. 500; *Swift* v. *P. M. S. S. Co.*, 106 N. Y. 214; *Muschamp* v. *L. & P. J. Ry. Co.*, 8 M. & W. 421; *W. R. R. Co.* v. *Jaggerman*, 115 Ill. 407; *I. C. R. R. Co.* v. *Johnson*, 34 Ill. 389; *I. C. R. R. Co.* v. *Frankenberg*, 54 Ill. 88; *M. O. Co.* v. *C. & A. R. R. Co.* 54 N. Y. 197; *Whitworth* v. *E. Ry. Co.*, 87 N. Y. 413; *Root* v. *G. W. R. R. Co.*, 45 N. Y. 532.) As the contract was for through transportation to New York, the plaintiff was entitled to recover upon the second cause of action. (*Talcott* v. *W. R. R. Co.*, 66 Hun, 456; *Root* v. *G. W. R. R. Co.*, 45 N. Y. 524; *Jennings* v. *G. T. Ry. Co.*, 127 N. Y. 438.) There was sufficient evidence to show that the Wabash Western Railway Company had notice that the trunks contained samples of merchandise, as well as Cullom's personal effects, and undertook to carry the same, and the referee erred in granting a nonsuit as to the

first cause of action. (*Sloman* v. *G. W. Ry. Co.*, 67 N. Y. 208; *Stoneman* v. *E. Ry. Co.*, 52 N. Y. 429; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 285.)

*George F. Brownell* for respondent. The Wabash Company performed its contract when it carried Cullom and his baggage safely to Detroit, the terminus of its line, and delivered the trunks to its connecting carrier, the Grand Trunk Company, and the defendant is not liable for their loss upon the line of the Grand Trunk Company. (*Rawson* v. *Holland*, 59 N. Y. 611; Wood's Browne on Carriers, 90, n.; *Myrick* v. *R. R. Co.*, 107 U. S. 102; *P. R. R. Co.* v. *Jones*, 155 U. S. 333; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 278; *Milnor* v. *N. Y. & N. H. R. R. Co.*, 53 N. Y. 363; *Poole* v. *D. L., & W. R. R. Co.*, 35 Hun, 29; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Knight* v. *R. R. Co.*, 56 Me. 234; *Straiton* v. *R. R. Co.*, 2 E. D. Smith, 184; *Briggs* v. *Vanderbilt*, 19 Barb. 222.) The evidence entirely fails to sustain the cause of action alleged in the complaint. (*Briggs* v. *Vanderbilt*, 19 Barb. 222, 226; *R. R. Co.* v. *Remmey*, 13 Ind. 518; *R. R. Co.* v. *Burnett*, 89 Ind. 457.) The evidence does not establish a contract to carry the plaintiff's property as Cullom's baggage under which the plaintiff can recover. (*Dexter* v. *S. B. & N. Y. R. R. Co.*, 42 N. Y. 333; *Hawkins* v. *Hoffman*, 6 Hill, 586; *Blumantle* v. *R. R. Co.*, 127 Mass. 322; *M. C. R. R. Co.* v. *Carrow*, 73 Ill. 348; *Stimson* v. *R. R. Co.*, 98 Mass. 83; *Alling* v. *R. R. Co.*, 126 Mass. 121; *Humphreys* v. *Perry*, 148 U. S. 627; *Wilson* v. *G. T. Ry. Co.*, 57 Me. 60; *Beecher* v. *G. E. R. R. Co.*, L. R. [5 Q. B.] 241; *B., etc., Co.*, v. *Keys*, 9 H. L. Cas. 556.)

VANN, J. This action was brought to recover the value of certain property destroyed while in transit from Chicago to New York under contracts made by Frederick H. Cullom, the plaintiff's agent and assignor, with the Wabash Western Railway Company, the defendant's predecessor.

The complaint sets forth four causes of action, but the third

and fourth are not now important, since the plaintiff submitted to a voluntary nonsuit as to them. The other two were to recover the value of (1) certain samples belonging to the plaintiff, and (2) of Cullom's personal effects.

The defendant was organized after May 1st, 1889, by the consolidation of several railroad corporations, including the Wabash Western Railway Company, and by virtue of the consolidation the defendant assumed all the debts and obligations of the constituent corporations. Prior to April 27th, 1889, the Wabash Western was a common carrier operating a line of railroad between Chicago and Detroit and doing business as such by its own and connecting lines for the carriage of passengers and their baggage. It sold through tickets to New York, and sleeping cars always went through to New York over the Grand Trunk and West Shore, its connecting lines, and sometimes, but not generally, baggage cars also went through without change.

Prior to said consolidation, and on the 7th of April, 1889, Mr. Cullom, who was a commercial traveler in the employ of the plaintiff, went to the office of the Wabash Western Railway Company in Chicago and purchased from it a round trip excursion ticket to New York and return and paid therefor the sum of $25.00, which was a special and reduced rate. The ticket purported to have been issued by the Wabash, St. Louis & Pacific Railway, a predecessor of the Wabash Western. It was an old form at one time used by the former company, which once operated the line between Chicago and Detroit. At its head it contained the words, " Special Excursion Ticket. Tourist Contract. Good for one first-class passage to New York, N. Y., and return. Subject to following contract. In consideration of the reduced rate at which this ticket is sold the bearer or holder of the same agrees to and with the several companies over whose lines this ticket entitles him to be carried, as follows, to wit: *First.* That in selling this ticket the Wabash, St. Louis & Pacific Railway Company acts as agent and is not responsible beyond its own line." The rest of the purported contract is not now important. Six

coupons were annexed, one of which contained the words at the head thereof, "Grand Trunk Railway. Detroit to Suspension Bridge on conditions named in contract," and another, "West Shore R. R. (N. Y. C. & H. R. R. R. Co. Lessee), Suspension Bridge to New York on conditions named in contract."

The provisions of the ticket were not brought to the attention of Mr. Cullom by the person selling it, nor did he read them until after the accident which resulted in the destruction of the property in question. Nothing appears to have been said by Cullom or the ticket agent, except by the former, that he wanted a ticket to New York, and by the latter, that the price was $25.00. Sometime after buying the ticket Mr. Cullom proceeded to the baggage room of the Wabash Western Railway Company and delivered four trunks, containing the articles for the value of which recovery is sought, to the baggage agent in charge. The trunks were of the kind in ordinary use by commercial travelers to carry samples. He handed the ticket to the agent who asked him "where to," and was told New York. The agent then weighed the trunks and said they weighed light, when Cullom replied "yes, they contain samples of underwear." The agent, as Cullom testified, "checked free up to 150 lbs., and the trunks weighed much more than that, and he told me that I would have to pay $16.00, and five or ten cents to have the trunks checked" from Chicago to New York. Mr. Cullom paid the amount asked, and received from the agent three brass checks and one cardboard check, which was as follows:

> "THE WAB. WEST'N R'Y Co
> Foreign Excess Baggage
> Duplicate Check
> Date, 4–27, 1889,
> From Chicago
> to New York.
> Route, G. T. W. S.
> No. of Tickets, 1.
> Excess Wt. 570, amt. $16.00
> 2802

On reverse side :

To BAGGAGE AGENTS.

This is a duplicate check, and also a receipt for excess charges paid for baggage bearing numbers of checks as shown on face of strap check of corresponding number.

Receiving agent will forward this duplicate and receipt to general baggage agent or auditor of his company to be held as a check against the company issuing same.

Receiving agents will certify to the total weight of the baggage as covered by the check numbers shown on the face of strap check of corresponding number.

SAM. A. OVERHOLT,

*Gen'l Bag. Agt.,*

*The Wabash Western Ry. Co.*

Gross weight. .............................. . . lbs.

Signed........................."

Cullom saw his trunks put on the Wabash Western train and took his place in the sleeper which was to go through to New York without change. The next morning, between Dundas and Hammond, Ontario, on the line of the Grand Trunk railway, an accident occurred and the most of the property contained in the trunks was destroyed by fire. The property destroyed, so far as it belonged to the plaintiff, was worth about $350.00, and about $300.00 so far as it belonged to Cullom, who assigned his claim to the plaintiff before  .'s action was commenced. He was a commercial traveler, familiar with the course of business and general practice of railroads with reference to selling tickets and checking baggage over their own and connecting lines. The defendant's predecessor carried this baggage safely to the terminus of its road at Detroit and delivered it to the Grand Trunk, the connecting carrier, whereupon it was transferred into the baggage car of that company and carried in its train until the accident happened. The sleeping car, which Cullom entered at Chicago, was attached to the Grand Trunk train at Detroit. It also appeared, as was stated by the referee, "that a very large pro-

portion of the entire business of wholesale and commission merchants in this country is conducted by commercial travelers ; that such travelers generally carry samples belonging to their employers in trunks, the size, color, appearance and general character of which is generally such as to distinguish them from the trunks of ordinary passengers containing personal baggage ; that it is a universal custom of the railway companies of the country to check and carry in baggage cars such samples and effects on the same train with commercial travelers, in the same manner as the trunks of ordinary passengers, containing personal effects, are carried, and to charge and receive payment for the weight of said trunks in excess of 150 pounds, in the same manner as the excess weight of ordinary baggage is charged for ; that the railroad corporations generally throughout the country, including the defendant, have knowledge of such custom, and that such sample trunks are habitually so checked, carried and paid for."

The plaintiff claims that the contract made by his agent with the Wabash Western Railway Company was for through transportation of the passenger and his baggage by that company from Chicago to New York and return, while the defendant claims that the contract of said company, as principal, was for transportation from Chicago to Detroit, and that the remainder of the contract was made by it as agent of the various connecting lines for transportation over their respective routes.   This fundamental question was decided by the learned referee as a question of law, so far as it related to the cause of action relating to the samples owned by the plaintiff, and as a question of fact so far as it related to the personal effects of Cullom, the plaintiff's assignor, for he granted a nonsuit as to the former and dismissed the complaint upon the merits as to the latter.

It is clear that the plaintiff's agent made two contracts, one for the transportation of himself and not to exceed 150 pounds of baggage, and the other for the transportation of merchandise. (*Millard* v. *Missouri, Kansas & Texas R. R. Co.*, 86 N. Y. 441.)   This case leaves no room for discussion as to the

independent character of these contracts, for upon a state of facts analogous to those before us it was held that an action brought to recover for the loss of baggage was not a bar to an action brought to recover for the loss of merchandise, because the two actions were based upon separate contracts.

We will first endeavor to ascertain what the contract was in relation to the samples. The contract made by the purchase of the ticket bears but slightly upon the contract made several hours later for the transportation of the baggage, as the function of the ticket, so far as the checking of the trunks was concerned, was exhausted by checking Mr. Cullom's personal effects.

A man with the words " Baggage Agent " on his cap was behind the counter of the Wabash Western Railway Company, in the baggageroom of its passenger depot at Chicago, engaged in checking baggage, when Mr. Cullom, after waiting for his turn, presented his ticket and the four trunks. The railroad company by placing that man as baggage agent in its baggageroom and furnishing him with checks, held out to the public that he had general authority to check the ordinary baggage of passengers. By furnishing him with blank card-board checks for " excess baggage," stamped " From Chicago to New York," and signed by its " general baggage agent," it further held out to the public that he had authority to contract for the transportation of extra baggage from Chicago to New York, and, necessarily, to decide what kind of goods should be included under the head of extra baggage, at least to the extent of including the samples of commercial travelers, owned by their employers, in view of the universal custom proved in that regard. (*Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 278; *Sloman* v. *Great Western Ry. Co.*, 67 N. Y. 208; *Perley* v. *N. Y. C. & H. R. R. R. Co.*, 65 N. Y. 374; *Stoneman* v. *Erie Ry. Co.*, 52 N. Y. 429; *Millard* v. *Missouri*, *K. & T. R. R. Co.*, 20 Hun, 191; affirmed, 86 N. Y. 441; *Wheeler* v. *Oceanic S. N. Co.*, 125 N. Y. 155; *Strouss* v. *Wabash, St. L. & Pacific Ry. Co.*, 17 Fed. Rep. 209; Fetters Carriers of Passengers, §§ 605, 606.)

In the *Isaacson* case it was held to be within the apparent scope of a baggagemaster's employment, when asked by a passenger whether the company checked baggage over a route indicated by its passage ticket, to answer the question and to bind the company by checking the baggage over connecting roads; and that, although in fact he had no authority to check it by the route specified, the company was holden, in the absence of negligence on the part of the passenger in not discovering the want of authority. The court said: " Parties may deal with the agents of corporations upon the presumption that they possess the powers usually assigned to the office they hold, and the principal is bound as to third persons acting in good faith, by the act of an agent within his apparent authority, although in the particular instance it was unauthorized. In considering the inference to be drawn as to the authority of the baggagemaster in this case from his official designation, and from the fact that he was acting as the agent of the defendant in receiving baggage of passengers, the jury was entitled to take notice of the usual methods of railroad transportation. The contract to carry the baggage of passengers as incident to the contract to carry the person, does not become defined as to the particular baggage, its amount, or other incidents, until the baggage is delivered to the baggagemaster. So also in respect to checking baggage, the arrangement, from the nature of the business, must, in large places at least, be made with the baggagemaster. It would be impracticable in the city of New York, for example, to arrange the details for the carrying of baggage, with the ticket agent. Such details are left, as they necessarily must be, to be subsequently arranged between the passenger and baggagemaster at the very time of delivering the baggage. The passenger can ordinarily deal with no one else in respect to them. He may not know, or if he knows, he would not ordinarily be able to find the superior agents of the corporation. The passenger has, we think, the right to assume that the baggagemaster possesses the requisite authority to make all ordinary and usual arrangements with passengers in respect to the

transportation of baggage. If a question arises as to checking baggage beyond the line of the road receiving it, the practice of the company is presumably known to the baggagemaster, and he is practically the only person to whom the inquiry can be addressed. It would produce great inconvenience if it should be held that the baggagemaster did not represent the company in respect to the ordinary incidents of baggage transportation.     *     *     *     It is, we think, within the apparent scope of a baggagemaster's employment, when asked by a passenger whether the company checks baggage over a route indicated by his passage tickets, to answer the question and to bind the company by checking it over connecting roads."

In the *Sloman* case a commercial traveler had two large trunks containing samples, differing in appearance from ordinary traveling trunks, and a valise for his personal baggage. He had the trunks checked from Flint, Michigan, to Rochester, N. Y. In conversing with the baggagemaster, he spoke about his customers, which fact, together with the appearance of the trunks, warranted the jury, as the court held, in concluding "that the baggagemaster understood that the agent was traveling for the purpose of selling goods, and that these trunks contained his wares." He paid for and received a receipt ticket for extra baggage. It was held that where a railroad company receives trunks of a passenger with notice that they contain property other than his baggage, and charges and receives extra compensation for their transportation, an agreement to carry the property as freight may be inferred therefrom, and that proof of these facts will sustain a recovery for loss of the property; that in such case, where the property is not that of a passenger, but it is in his hands as agent only, and he makes the contract and pays the compensation for its carriage on account of and in the conduct of the business of his principal, an action is properly brought in the name of the latter to recover for the loss.

In the *Strouss* case the court said : " The company is liable as a common carrier to the owners of extra baggage, where it is shown that the baggagemaster accepted it with the knowl-

edge, and with the understanding and arrangement between the passenger and himself, as the agent of the company, that extra payment should be made for the transportation thereof. If he took, under such an arrangement as that, the three trunks, and gave his checks for them, it made such a contract between the railroad company and the plaintiffs in this suit, for the breach of which an action might lie in favor of the plaintiffs for injuries sustained to the goods. If the baggage-master had knowledge of the character of these trunks, that they contained merchandise, and contained other matters than the personal baggage of the plaintiffs, or this member of the firm of the plaintiffs, then if he charged for the extra baggage and accepted it as such, it makes the company liable as common carriers to deliver the trunks at the place designated by the checks or contract for carriage between the plaintiffs and the railroad company, and it would be responsible for any injury which would occur to this baggage in its transportation and before its delivery at the place where it was to be delivered. The railroad company, having placed the baggage-master in its baggageroom, holds out to the public that he has authority to make arrangements as to what sort of baggage shall be carried by the railroad company, and having given him the direction and the control and the management of these articles of freight, he, in the eye of the law — so far as the outside public is concerned — would be authorized and have authority to make such contract as is claimed by the plaintiffs in this suit that this baggagemaster did make, and to bind the company in that respect. So that, although these trunks were not filled with the ordinary baggage of the passenger, if he accepted them as merchandise and took extra pay for them, and gave a check indicating their receipt on behalf of the railroad company, it would be such a contract as would authorize plaintiffs to bring suit in case it was broken."

The baggage agent in question, therefore, stood as to Mr. Cullom in the place of the railroad company. The number and appearance of the trunks was some evidence that they contained merchandise, and the agent was expressly told that

they contained samples. In view of the custom proved, that commercial travelers generally carry samples belonging to their employers in their trunks, this warranted the inference that the baggage agent knew the exact facts. On being informed that Cullom wished to have them checked to New York, he required the payment down of $16.00 for transporting them as extra baggage to that place, and delivered a check stamped with the name of the company he represented, and with the words "From Chicago to New York." As was said by this court in the *Sloman* case : "If the trunks and this compensation were received with notice that the trunks contained property other than the baggage of the passenger, then there is evidence of an agreement aside from the contract to transport the passenger and for a separate consideration, to carry such property as freight, and this will sustain the recovery." The referee was, therefore, authorized to find, as a fact, that the company agreed, aside from the contract to transport the passenger, for a new and independent consideration, to transport the trunks containing merchandise to the city of New York, and, as a conclusion of law, that the plaintiff as undisclosed principal could enforce the agreement. Hence the nonsuit was reversible error as to the first cause of action.

We now come to the second cause of action relating to the personal baggage of the passenger. The referee did not nonsuit as to this, but retained the case, and, after considering the evidence, found as a fact that the defendant's predecessor "did not on or about the 27th day of April, 1889, agree to carry said Cullom from Chicago, Ill., to New York city." If this finding rests on a conflict of evidence or upon uncontradicted evidence permitting diverse inferences, it is beyond our power of review and is conclusive upon the question now under consideration. ( *White* v. *Benjamin*, 150 N. Y. 258.)

The company had the power to contract for through transportation, for it has long been settled that an owner of one of several lines for the transportation of passengers, running in connection over different portions of a route of travel, may

contract as principal for the conveyance of a passenger over
the whole route and that such contract may be established by
the circumstances, notwithstanding the passenger received
tickets for the different lines signed by their separate agents.
(*Quimby* v. *Vanderbilt*, 17 N. Y. 306 ; *Hart* v. *Rensselaer &
Saratoga R. R. Co.*, 8 N. Y. 37 ; *Williams* v. *Vanderbilt*, 28
N. Y. 217, 221 ; *Buffett* v. *Troy & Boston R. R. Co.*, 40 N.
Y. 168, 172 ; *Condict* v. *Grand Trunk Ry. Co.*, 54 N. Y.
500, 502.)   While the company had the power to contract for
through transportation, the question remains whether it did so
contract.   The facts bearing upon this question are few and
simple.   Mr. Cullom asked the company's ticket agent for a
ticket to New York, paid him the sum demanded and noth-
ing farther was said or done except the delivery of the ticket.
The company was not a common carrier of passengers between
Chicago and New York and did not hold itself out as such.
Its line did not extend east of Detroit.   Mr. Cullom testified
that he knew the Wabash railroad did not extend to New
York and was not a common carrier to that point, but that its
eastern terminus was at Detroit; that he knew the ticket he
intended to purchase was a ticket of the West Shore Com-
pany for the portion of the route between Suspension Bridge
and New York city, and that for the portion of the journey
from Detroit to Suspension Bridge he would have to use some
line between the terminus of the Wabash and the beginning
of the West Shore ; that the ticket he was to purchase was a
coupon ticket with one coupon for each railroad over which
he was to travel.   He further testified : " I knew that besides
the coupons for the different portions of the journey, there
was a printed contract at the head of the ticket, but did not
read it until after the accident.   I saw it was there and did
not pay any attention to what it read.   I have been accus-
tomed during the years in which I have journeyed about the
country to make long continuous journeys over connecting
railroads, and when I left New York for Peoria my journey
took me over connecting roads and I purchased one coupon
ticket as I was accustomed to do when I make journeys of

60

long distances with the coupon of each road for the portion of the line over that road.  I know it is the custom in the course of business of railroads generally in the country to sell tickets over their own and connecting lines with the coupon of each road for the portion of the line over that particular road, and the ticket I bought was of the same general character and had coupons."

The ticket delivered to Mr. Cullom was an old form, at one time used by the Wabash, St. Louis & Pacific Railway Company, still such tickets were used occasionally by the Wabash Western, which succeeded to the ownership of the line from Chicago to Detroit.  While we regard the ticket as a voucher and not a contract with the Wabash Western, because its name does not appear therein, still, it was a coupon ticket with the names of the connecting lines printed upon the face of the coupons.  Mr. Cullom knew what a coupon ticket meant, and he intended to purchase a ticket that would take him over the West Shore and another connecting line.  This warranted the inference of notice to him of what was stated at the head of the ticket, to wit, that the company "selling this ticket" acted "as agent," and that it did not intend to become "responsible beyond its own line."  This is true, even if the name of the company was not correctly given.  While not controlling, it was a circumstance of importance to be considered in connection with the other important fact that Cullom paid through fare to New York, and received a through ticket to that place.  Upon all the evidence we think it became a question of fact whether the contract was for through transportation or not, and that the referee was not bound, as matter of law, to find in accordance with the plaintiff's theory. (*Milnor* v. *N. Y. & N. H. R. R.  Co.*, 53 N. Y. 363; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Auerbach* v. *N. Y. C. & H. R. R. R. Co.*, 89 N. Y. 281; *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 283; *Root* v. *Great Western R. R. Co.*, 45 N. Y. 524; Thomas on Negligence, 194; Hutchinson on Carriers [2d ed.], 822.)

The plaintiff having failed to establish such a contract as

would enable him to recover upon the second cause of action, it follows that the complaint was properly dismissed as to that count of the complaint.

The judgment below should, therefore, be reversed and a new trial granted as to the first cause of action set forth in the complaint, and in all other respects affirmed, without costs in this court to either party.

HAIGHT, J.   If the referee had found the facts upon the first cause of action the same as he did with reference to the second, there would have been no trouble with this case. Instead of doing that he improperly granted a nonsuit. (*Scofield* v. *Hernandez*, 47 N. Y. 313.)   For this reason I concur for reversal as to the first cause of action, and for affirmance as to the second cause of action, but do not agree with VANN, J., with reference to the other matters discussed in his opinion.

GRAY, J. (dissenting only as to the first cause of action). This action was commenced to recover the value of property, which was destroyed while in transit from Chicago to New York.   But two of the four causes of action set forth in the complaint remain for consideration ; inasmuch as, on the trial before the referee, the plaintiff elected to suffer a nonsuit as to the third and fourth causes of action.   Of the two causes of action thus remaining, the first is asserted by the plaintiff on his own behalf, as owner of certain samples of merchandise, packed in the trunks of one Cullom ; who was employed by him as a commercial traveler and who was a passenger between the two cities mentioned, upon a ticket purchased at an office of the Wabash Western Railway Company in Chicago.

The second of these causes of action is for the value of Cullom's, the plaintiff's assignor's, personal baggage ; the claim for which Cullom had assigned to the plaintiff.   The plaintiff was nonsuited, upon the trial, upon both causes of action and the judgment upon the referee's report having been affirmed at the General Term, the plaintiff now appeals to this court. A brief reference to the material facts disclosed in the record

only need be made and they are undisputed. The defendant corporation has succeeded to the property and liabilities of the Wabash Western Railway Company; which operated, at the time of the loss in question, a line of railroad between Chicago and Detroit, and which was, itself, the successor of the Wabash, St. Louis and Pacific Railway Company. On April 27th, 1889, Cullom, desiring to avail himself of certain special excursion rates of fare then prevailing between Chicago and New York, went to the office of the Wabash Western Railway Company, in Chicago, and purchased a "round trip" excursion ticket between those cities. The ticket was of an old form and purported upon its face to be issued by the Wabash, St. Louis and Pacific Railway Company, the predecessor of the Wabash Western Railway Company. Attached were coupons; each of which read that it was issued by the Wabash, St. Louis and Pacific Railway Company and, further, contained the name of the particular railway company constituting the connecting line of railway over which the passenger would be carried upon his way to New York and upon his return thence. His ticket, and, as well, each coupon attached, stated that it was subject to the conditions of a certain contract printed upon the ticket; which stated that, in consideration of the reduced rate at which the ticket was sold, the holder agreed with the several companies, over whose lines the ticket entitled him to be carried, among other things, that "in selling this ticket, the Wabash, St. Louis and Pacific Railway Company acts as agent, and is not responsible beyond its own line;" and "that it is especially agreed and understood by him that no agent or employee of any of the lines named in this ticket has any power to alter, modify or waive in any manner any of the conditions named in this contract." All that occurred at the time of the purchase by Cullom of the ticket was his statement to the ticket agent that he wanted a ticket to New York. After purchasing the ticket, Cullom, the same day, took four trunks containing the articles in question to the railway station and delivered them to the baggagemaster; requesting that they be checked to New York. He handed him his passenger

ticket and, after paying an extra charge demanded for so much of his baggage as was in excess of 150 pounds allowed to be carried free by a passenger, received some brass checks and a cardboard check; the latter being entitled "Foreign Excess Baggage duplicate check," purporting to be issued by the Wabash Western Railway Company from Chicago to New York and bearing the signature of the general baggage agent of that company. Cullom then took his place in a sleeping car, intended to be run through to New York. The following morning, at a point on the line of the Grand Trunk Railway Company, a distinct railroad corporation, an accident occurred and the property in question was destroyed by fire.

Among the findings of fact, made by the referee, before whom the trial was had, were these, namely: "That the Wabash Western Railway Company was not, and did not represent itself to be, a common carrier of passengers and their baggage between Chicago and New York, nor did it do business as such; that that company, in its operation of that portion of its road to Detroit, sometimes used the name of the Wabash, St. Louis and Pacific Railway Company, (its predecessor in interest), on passenger tickets and on baggage checks, and that the depot in Chicago was used jointly by several railroad companies; the baggagemaster of the Chicago and Western Indiana R. R. Co., one of them, having charge of the checking of the baggage upon the different roads and to points upon their several connecting lines. It appears that the form of ticket, which Cullom purchased, was the only one in use by the Wabash Western Railway Company from Chicago to New York and that the sum paid for it was apportioned among the three lines, over which the latter city was reached by the passenger, according to the length of the respective portions of the route. It, also, appeared that Cullom had been a commercial traveler for years and was familiar with the system by which railroad companies would sell tickets over their own and connecting lines, by means of coupons attached and designed for use upon the particular road over which the passenger would be carried, and he knew the ticket

he purchased to be of the same general character. He testified to knowing that there was a printed contract upon his ticket; but he did not read it until after the accident occurred.

The claim of the plaintiff is that the Wabash Western Railway Company contracted with his assignor, Cullom, to carry the property in question from Chicago through to New York and that, by the contract for transportation, the company became responsible for the safe delivery of Cullom's personal baggage and for the plaintiff's merchandise in Cullom's trunks. He rests the contract for transportation upon what was implied in the transaction of the purchase of a ticket to New York from the Wabash Western Railway Company and claims that the ticket received at the time did not affect the contract, but was a mere token.

Considering the first cause of action sued upon, the argument is that, because the company had notice that the trunks contained samples of merchandise and undertook, through the agency of its baggagemaster, to carry the same for the plaintiff's agent, it became responsible for its safe delivery and that it was, therefore, error to nonsuit him as to the claim. The evidence shows that the baggagemaster was informed by Cullom that the trunks contained samples of underwear at the time they were checked; but he was not informed that Cullom was not their owner. Much evidence was offered by the plaintiff to show the extent to which it is customary in the community for merchants, in the conduct of their business, to send out commercial travelers; who carry with them samples belonging to their employers, upon which orders are to be solicited by them. Evidence was, also, adduced to show a custom by some railroad companies to check for a commercial traveler trunks containing such samples, in the same manner as trunks containing personal effects.

Whatever the contract between Cullom and the company, it was, at most, a contract to carry him and his personal baggage; with the limitation that for all weight of baggage in excess of 150 pounds he should pay an additional compensation at a certain rate, based upon the ticket rate. There was

no contract to carry any merchandise belonging to some other person than Cullom, and therein, as I think, lies the difficulty in the way of the plaintiff maintaining this action for the loss of his property; which was not obviated by the proof of the custom prevailing in the community. The fact of Cullom being the plaintiff's agent does not affect the question, as I think; because the question is simply one of what the carrier undertook, when checking the baggage upon Cullom's production of a ticket. It has been held in the courts that a railroad company is not liable for the loss of merchandise contained in trunks of commercial travelers, which belonged to their employers. It was so held in *Hawkins* v. *Hoffman* (6 Hill, 586); a case which was relied upon as an authority by the United States Supreme Court, as lately as in the case of *Humphreys* v. *Perry* (148 U. S. 627). In those cases, as, also, in that of *Dexter* v. *Syracuse, Binghamton & N. Y. R. R. Co.* (42 N. Y. 326), the doctrine of a carrier's liability was held not to extend beyond the personal baggage of the passenger. In *Humphreys* v. *Perry*, the doctrine was very elaborately reviewed in the light of the cases, in this country and in England, and the conclusion was reached that the only contract entered into is for the transportation of personal baggage, and that the term would not embrace samples of merchandise. Under that rule the carrier would not be liable for articles other than personal baggage, in the absence of some agreement or understanding that they were to be carried as baggage, and no extension of the liability of the carrier could be created by mere evidence of the custom and usage of passengers to take with them, and of the carriers to carry, as personal baggage, articles of merchandise, similar in appearance. (*Blumantle* v. *Fitchburg R. R. Co.*, 127 Mass. 322; *Humphreys* v. *Perry, supra.*)

Assuming, as we must, that Cullom, the plaintiff's assignor, informed the defendant's baggage agent that his trunks contained other articles than personal effects, that fact only goes to show, at the furthest, that the latter undertook to check for Cullom trunks containing other property of his than what

might be strictly classified as personal baggage; but it did not prove that he intended to make the railway company responsible for the carriage of merchandise belonging to some one else. I do not think that authority can be implied on the part of this baggagemaster to bind his company, in checking upon the passenger's transportation ticket trunks containing articles not constituting the passenger's personal baggage, or property carried for him as such. A carrier is not bound to inquire as to the nature of the contents of baggage offered by a passenger to be checked. It has the right to presume that it contains his personal effects and if informed that the contents are something beyond what might be comprehended within that description, it may be that it would become responsible to the passenger therefor as the result of the understanding with its agent. That would be a question upon the facts and is not here. This baggage agent had no power to check, as the passenger's baggage, the merchandise belonging to some one else; or, at least, such a power was not shown. This baggagemaster, checking baggage for all the companies using the depot, had not the same power as a general freight agent would possess. In the subdivision of the corporate business, each corporate agent has his particular department, with no powers to bind the corporation beyond its sphere. It was not within the scope of the apparent authority of the baggage agent to bind the company he represented, by making a contract with a passenger to carry for him, as his baggage, the property of some other person. The law only conferred upon him such authority as was incidental to the business of checking baggage for passengers upon their tickets. I wholly fail to perceive the principle upon which the company could be held to be under any liability to the plaintiff for a breach of contract to carry the merchandise as baggage. (*Alling* v. *Boston & Albany R. R. Co.*, 126 Mass. 121; *Wheeler* v. *O. S. N. Co.*, 125 N. Y. 155.) The only liability, conceivable upon legal principles, was that of a bailee of the plaintiff's goods; in which case the defendant would only be liable for its negligent acts.

That an additional compensation was asked and paid for the carriage of Cullom's trunks cannot affect the question. The contract between the parties was for the transportation of himself and his baggage from Chicago to New York for certain rates of fare. The excess of baggage and the extra rate payable therefor did not bring about any new, or separate, contract; but were incidents to the contract of transportation, entered into between the parties at the time of the purchase of the ticket. The passenger's trunks were received and checked, because he held a ticket of the company entitling him and his baggage to be carried to his destination, upon the condition that he should pay an extra charge for excess in weight of the latter. The baggagemaster had no authority to bind the company to any further and different contract. (*Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, 94 N. Y. 278.) The argument that the undertaking of the carrier must be presumed to have been to carry the property, thus checked and paid for, to the place of destination, would only apply to a contract of affreightment with its owner.

. The case of *Sloman* v. *Great Western Ry. Co.* (67 N. Y. 208), has no application to the facts of this case. There the evidence was of such a character, respecting the knowledge possessed by the defendant's " agent and baggagemaster " as to the nature of the contents of the trunks, for the transportation of which a charge was made, as to make it a question for the jury to determine whether he did not understand that the trunks contained the plaintiff's wares and whether he had not agreed to carry them as freight. No point was made at the trial as to his not having authority to take them as freight.

I think that the judgment of nonsuit as to this cause of action was correct.

The other cause of action is to recover for the loss of Cullom's personal baggage, the claim for which he had assigned to plaintiff, and that involves the question of the extent to which the contract with the defendant made it responsible for its safe delivery at the place for which checked. That a railroad company may contract for the carriage of passengers and

of goods, so as to extend its liability beyond the terminal
points of its road, is not disputed; but, in the absence of any
such contract, the law does not imply anything more than an
undertaking coextensive with its ownership and control. The
question in every case must be, simply, what contract has
been made. Under the facts disclosed, what is to be reasonably
inferred? If any liability is to be charged upon the defend-
ant, it must, of course, be by reason of its violation of some
contract. The only testimony of the transaction had by Cul-
lom with the ticket agent was as follows: "I purchased a
round trip ticket from Chicago to New York, at the city office
of the Wabash Western Railroad Company in Chicago on that
date.

"Q. What did you say to the ticket agent?

"A. I wanted a ticket to New York."

He paid the fare for an excursion ticket, and received the
ticket above described, whose printed matter gave notice that
the Wabash, St. Louis and Pacific Railway Company acted as
agent and was not responsible beyond its own line and whose
coupons referred to that notice and bore upon each the name
of the railroad company carrying the holder between the
places named therein. Thus, there is nothing to evidence any
particular engagement of the defendant towards Cullom,
except what the ticket showed. As we have seen, he knew of
the printed matter upon his ticket; but did not pay any atten-
tion to it, until after the accident happened, and he knew that
it was usual for railroad companies, in selling tickets to points
beyond their line, to issue that sort of a coupon ticket.

It is said that this ticket is not to be given the force of a
contract, because it purported to be issued by a company of
another name and because it was a mere token or voucher in
the passenger's hands. Whether a ticket is a contract or not
depends upon the circumstances. Where a person receives,
upon paying his fare, a simple ticket to the point of his des-
tination, it may well be that it is the mere token of the
carrier's contract to carry him and his baggage to that point;
as in *Burnell* v. *N. Y. C. R. R. Co.* (45 N. Y. 184) where

the Hudson River Railroad Company, over which, as the connecting line, the plaintiff was carried from Palmyra to New York, was deemed to be the agent of the New York Central Railroad Company in performing the latter's contract. But here the ticket was complex and, assuming that it contained no contract between the parties, it gave notice to the holder that the carrier did not undertake any responsibility beyond its own line and was only acting as agent for connecting carriers. It guarded against implications from its sale of a ticket through to New York. What could it have done more effectually, in that respect, and what legal principle forbade it from doing it in that way? If a passenger is not to be held to some contractual obligation, which is printed upon the ticket handed to him, there is no reason why he should not be chargeable with knowledge of any reasonable notice upon it; which guards against any misconception, to the effect that the carrier is undertaking to be responsible for occurrences upon the lines of connecting carriers, over which it cannot exert any control. As the referee found, the company was not, and did not hold itself out to be, a carrier of passengers and their baggage the entire distance from Chicago to New York and it adopted this mode of notifying purchasers of tickets and to protect itself against any implied undertaking, or any engagement of its ticket agent, extending its responsibilities. It was as though it said to the purchaser, in so many words, " I will sell you a ticket, which will carry you through to New York; but, in doing so, I assume no liability for acts or occurrences upon those lines, over which this ticket gives you the right of passage."

It is not necessary that the printed matter upon the ticket should constitute a contract, in order that the defendant should have its benefit. It was a form of notice to the holder that it was not intended to assume any other responsibility, than what would ordinarily belong to it as a carrier between its terminal points. If the question might be considered to be an open one, I do not think, upon well-settled principles, or under such circumstances, that there is any justification for our extending

the carrier's assumption of responsibilities towards the passenger beyond the scope of its corporate operation, in the absence of some special contract of the parties.

In *Milnor* v. *N. Y. & N. H. R. R. Co.* (53 N. Y. 363), a person bought a ticket of the defendant from New York city to Sheffield, Mass. He received a slip of paper upon which were printed two detachable tickets; one purporting to be the defendant's ticket from New York to Bridgeport, and the other purporting to be the ticket of the Housatonic Railroad Company from Bridgeport to Sheffield. After his arrival at Sheffield, but before the baggage could be delivered, it was destroyed by fire. The action was commenced by the plaintiff, as his assignee, to recover damages of the defendant for the loss of the baggage. A judgment in favor of the defendant was affirmed by this court. In the course of his opinion, Church, Ch. J., after adverting to the rule that a railroad corporation may bind itself, by contract, beyond its line, said : " The importance to the public of holding the first company liable was pressed upon us upon the argument. It was conceded that it is competent for one company to sell tickets as the agent of another, in which case the company selling would not be liable where it appeared, as in this case, that the injury was caused by the neglect of another company. We can see no propriety in straining the rules of law or overturning ordinary presumptions of fact upon the supposed ground that the public will be benefited thereby. It is conceded that a notice upon the ticket, that the defendant acted as agent in the sale of the Housatonic ticket, would have relieved it of responsibility. The effect therefore of a decision against it, instead of benefiting the traveling public, would only lead to a slight change in the form of the tickets." He observed that he had been " unable to find any authority in this country which holds that the facts in this case constitute in law a contract on the part of the company selling the tickets for the entire route. The decided tendency of the authorities is the other way." (Citing cases in this and in other states.) He, also, observed that the facts proved, with respect to the sale of the ticket

and the checking of the baggage by the defendant to Sheffield, were not merely consistent with an agency on the part of the defendant to sell the Housatonic tickets, but that they fairly implied such agency. "The facts import an agency, and not a contract as principal, and the obligations of the parties are the same as though the tickets had been purchased at the offices of the respective companies."

In *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, (61 N. Y. 538), the plaintiff purchased at the office of the Baltimore and Ohio R. R. Co., in Washington, a coupon ticket from Washington to Buffalo, over several connecting railroads ; the last of which was that of the defendant. She received a check for her baggage, with the names of all the roads stamped upon it. Upon arriving at Buffalo, she demanded her baggage ; but it could not be found nor any trace of it, after being checked. The action was to recover for the loss. EARL, C., speaking for the court, said : "Either the Baltimore and Ohio Railroad Company made an entire contract to transport the plaintiff, with her baggage, to Buffalo, employing the other companies to perform the contract over their roads ; or, which is most probable, each company was the agent of the others to sell tickets and check baggage over the other roads. Upon neither theory is the defendant liable in this case. * * * Upon the second theory, the agency would be to bind each of the other companies to transport the passenger and baggage over its road, and each road would alone be responsible for the safety of the passengers and baggage upon its road. It is true that the baggage was checked through to Buffalo. While there was but one check with the names of all the railroads upon it, it is the same as if there had been a separate check upon the baggage for each road ; and the responsibility of neither road commenced until it received the baggage. These views are fully sustained by the opinion of CHURCH, Ch. J., in the case of *Milnor* v. *N. Y. & N. H. R. R. Co.*, (53 N. Y. 363). * * * According to the law of that case, if this action had been brought against the Baltimore & Ohio Railroad Company, which sold the ticket and checked the

baggage, it would have escaped liability by showing that the bagggage was lost after it had been carried over its road. The law of that case clearly is, that in such a case that company is alone liable upon whose road the baggage is lost or destroyed."

In *Auerbach* v. *N. Y. C. & H. R. R. R. Co.*, (89 N. Y. 281), the passenger held a coupon ticket for passage from St. Louis to New York over several lines of railroad; the ticket being by its terms good for one continuous passage and reciting that the company selling the ticket acted only as agent for the other roads, etc. The plaintiff sued for damages for his wrongful removal from the defendant's train between Buffalo and New York. It was held that "the contract at St. Louis, evidenced by the ticket and coupons there sold, was not a contract by any one company or by all the companies named in the coupons jointly for a continuous passage from St. Louis to New York. A separate contract was made for a continuous passage over each of the roads mentioned in the several coupons. Each company through the agent selling the ticket made a contract for a passage over its road, and each company assumed responsibility for the passenger only over its road. No company was liable for any accident or default upon any road but its own."

In *Isaacson* v. *N. Y. C. & H. R. R. R. Co.*, (94 N. Y. 278), the question arose as to the authority of a baggagemaster of the defendant. Instead of checking the plaintiff's baggage to New Orleans by a route indicated upon the ticket, as requested by the plaintiff, he gave the plaintiff checks by another route, and, upon his arrival in New Orleans, he failed to receive his baggage. In the course of his opinion, the relations of carrier and passenger were discussed by Judge Andrews; who, while holding that for the misdelivery by the defendant of the baggage, contrary to the agreement, to another carrier, it remained liable as insurer for any loss occurring upon the route upon which the baggage was diverted, said: "It will be useful, in determining the principal question, to refer to the obligation which a carrier of

passengers by rail assumes on the sale of a passage ticket, in respect to the personal baggage of the passenger. The carriage of the baggage of the passenger, under reasonable limitations as to amount, is the ordinary incident of the carriage of the passenger, and the duty arises on the part of the company to carry the baggage of the passenger, as incident to the principal contract without any specific agreement or separate compensation. * * * There arises, therefore, on the sale of a passenger ticket a contract to carry the person and the baggage of the passenger between the points indicated, on the road of the company issuing it, and to deliver the baggage at the end of the route to the passenger or his duly authorized agent." He said that : " It could not be claimed that a baggagemaster, in the absence of special authority, could bind the company by a contract to carry baggage beyond the terminus of the road, or agree upon special or unusual modes of delivery, etc.," and, again, that the check "has never, we think, been regarded as embodying the contract of carriage, but only as a voucher or token for the purpose mentioned." In that case, the liability of the defendant to the plaintiff, it will be perceived, was based upon the fact that the defendant had failed to carry out the agreement to carry baggage over the particular route requested and assented to at the time of the checking of the baggage. The liability was predicated upon the wrongful act in that respect.

In *Pennsylvania R. R. Co.* v. *Jones* (155 U. S. 333), Mr. Justice SHIRAS, delivered the opinion of the court, and quoting from *Railroad Co.* v. *Manufacturing Co.* (16 Wall. 318), said : " ' It is the duty of the carrier, in the absence of any special contract, to carry safely to the end of his line and deliver to the next carrier in the route beyond. This rule of liability is adopted generally by the courts in this country, and is in itself so just and reasonable that we do not hesitate to give it our sanction.' And in *Railroad Company* v. *Pratt* (22 Wall. 123, 129), it was said : ' The fair result of the American cases limits the carrier's liability as such, when no special contract is made, to his own line.' These cases are

followed by *Myrick* v. *Michigan Central R. R. Co.* (107 U. S. 102, 107), and it was there said : ' In the absence of a special agreement to extend the carrier's liability beyond his own route, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence.' "

In *Myrick* v. *Michigan Central R. R. Co.*, from which Mr. Justice SHIRAS quoted, the question was one of the liability of a railroad company as a carrier of goods, and it was said by Mr. Justice FIELD : " If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line : that is to deliver safely the goods to such line — the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it. This is the doctrine of this court, although a different rule of liability is adopted in England and in some of the states." He observed that, " The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the state courts, amounts to this : that each road confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach." (And see *Condict* v. *Grand Trunk R. Co.*, 54 N. Y. 500.)

The clear doctrine of these cases is that a carrier's responsibility to the passenger does not extend beyond the operation of its own road and cannot be made to so extend, except a special agreement be shown upon satisfactory evidence. In the early case of *Quimby* v. *Vanderbilt*, (17 N. Y. 306), the

only question was whether there was evidence of an express contract with the defendant to cause the passenger to be carried from New York to San Francisco. It was held that the defendant could make such a contract, which would bind him over connecting roads, and that there was sufficient evidence from which the jury might reasonably infer that he acted as the principal in the contract, which his agent made with the plaintiff for the entire passage. That decision adverted to the wise limitation imposed upon the English rule by the Court of Errors of this state, in *Van Santvoord* v. *St. John* (6 Hill, 157), in holding that evidence was admissible to show that a transportation line, receiving property without any express contract, undertook only to carry it over its own line and ·to then place it in the hands of the carrier over the next route.

If the plaintiff's rights are to be measured by the ticket, which was purchased at the Wabash Western Railroad Company's agency in Chicago, clearly, the company had limited its responsibility by the language upon the ticket to occurrences upon its own line. It expressly negatived any further assumption of responsibility. There was no implied responsibility on the part of the Wabash Western Railroad Company for occurrences beyond its own line and such a responsibility could not be implied as a term of the oral transaction of the purchase of the ticket.

If the rule should be otherwise held, it must logically follow that a passenger, who has suffered injuries upon a connecting carrier's route from its negligence, or that of its servants, may hold the corporation which issued his ticket liable in damages to him therefor. I do not think, in the absence of some very clear and express agreement to that effect, that a carrier's liability as insurer will be held to extend to that extraordinary degree. The rule works no hardship. The passenger is remitted to his remedy against the carrier, upon whose line he has suffered loss, or injury.

I think it of no material importance that the ticket bore upon it the name of the Wabash, St. Louis & Pacific Railroad Company, the predecessor of the Wabash Western Company.

62

As a fact, the Wabash Western Railroad Company was accustomed to issue that form of ticket, for transportation to New York, and its incompetency to establish a contract would not prevent its having the effect of a notice to the holder as to the extent of responsibility assumed.

I think the judgment of nonsuit as to this cause of action was correct and, therefore, that the judgment appealed from should be affirmed, with costs.

BARTLETT and MARTIN, JJ., concur with VANN, J., for reversal, etc., and HAIGHT, J., concurs in result by memorandum; O'BRIEN, J., concurs with GRAY, J., for affirmance; PARKER, Ch. J., not sitting.

Judgment reversed and new trial granted as to the first cause of action alleged in the complaint; in all other respects the judgment is affirmed, without costs of the appeal in this court to either party.