CHARLES H. O'NEILL, Respondent, *v.* JOHN B. JAMES, Appellant.

The defendant, a cement manufacturer, having, on the 13th of July, made a contract with the plaintiff to sell and deliver to him at an agreed price, 5,000 barrels of cement, " to be delivered and received in lots every week or two of about 400 barrels, all to be delivered and taken on or before the 1st of November," on the 26th of July made an offer in writing, that the plaintiff have " the privilege extended to him of taking 5,000 barrels of cement in addition to the 5,000 agreed upon heretofore, and upon the same terms and conditions."

The defendant delivering cement from time to time, on the 9th September, the plaintiff wrote to the defendant as follows: " You may enter my order for the acceptance of your offer (till October 1st, time given to conclude on) for the 10,000 barrels cement, to commence from date of first lot."—*Held*, in an action for refusal to deliver, that this was a valid and binding acceptance of the offer of the defendant of July, 26th, and constituted a valid contract between the parties; that it was not a mere notification by the plaintiff that he would avail himself of the privilege to accept the defendant's offer by the 1st of October; and that the refer-

ence to that date, in the acceptance, was to be construed as a mere reminder by the plaintiff that his acceptance was within the time he understood he had to make it.

*Held,* further, no demand having been made for the balance of the cement undelivered until after the 1st of November, that the plaintiff did not, by that omission, impair his right to receive the whole after that time. The defendant having until the 1st of November to deliver the cement, and being in no default before that date, as long as the lots of 400 barrels each were delivered weekly, if he desired to cut off the plaintiff's right to demand and receive the balance of the whole quantity after the 1st of November, he must on or before that day, tender the cement then undelivered.

Where a party upon the trial rests his case upon certain positions which he calls upon the court to rule in his favor as questions of law arising upon undisputed facts, if he also desires that any question of fact in the case be submitted to the jury, he must specify it and ask that it be so submitted. In the absence of this, his mere exception to the ruling of the judge that there is no question for the jury is unavailing.

(Argued October 27th, 1870; and decided November 22d, 1870.)

APPEAL from a judgment of the late General Term of the Supreme Court, in the first district, affirming judgment for the plaintiff for $1,169.22 upon a trial at circuit.

The action was for the recovery of damages for an alleged breach of contract, in not delivering a balance of 2,231 barrels of cement, claimed in the complaint to have been due to the plaintiff.

The defendant was a manufacturer of cement, on the creek, at Rondout, in Ulster county, which he brought to the city of New York, on orders or for deliveries on sales, by boat, a barge or canal boat, making trips to the city about once a week, and carrying about 1,000 barrels.

On or about the 13th July, 1865, an agreement was entered into between the parties, by which the defendant was to furnish, and the plaintiff to take, 5,000 barrels of cement on the terms and conditions contained in the following letters, one from the plaintiff to the defendant, dated July 12, 1865, and one from the defendant to the plaintiff, dated July 13, 1865, the last being in acknowledgment of the receipt of the other:

JERSEY CITY, N. J., *July* 12, 1865.

J. B. JAMES, Esq., 29 *Cedar street, New York:*

DEAR SIR.—I accept your offer for 5,000 barrels of cement at $1.40 per barrel, three months, delivered in lots of about 400 barrels each, in about one or two weeks apart from date, and all to be taken on or before the 1st of November; between 3,000 and 4,000 barrels to be delivered in Brooklyn, Clinton avenue dock, balance to be delivered in Jersey City. Send the first lot on or about this day week, or the 20th instant; will let you know when to send balance. This cement to be in good order and fresh.

Clinton avenue dock, near the navy yard. Inquire for F. Curran, superintendent of cathedral. I hope you have loaded the 100 barrels to-day on oil cars; are waiting for it.

C. H. O'NEILL.

OFFICE OF J. B. JAMES,
ROSENDALE CEMENT WORKS, No. 20 Cedar street,
NEW YORK, *July* 13, 1865.

C. H. O'NEILL, *Esq., Jersey City:*

DEAR SIR.—Yours of yesterday is at hand, accepting my proposal to furnish 5,000 barrels of cement between this and the 1st of November, at $1.40, three month's credit, and to be delivered in lots of about 400 barrels each; 3,000 to 4,000 at Clinton dock, Brooklyn, and the balance at Jersey City. Every week or two a lot, each lot to be settled for as delivered, by note or cash, less the discount of two (2) per cent. Please consider the contract as concluded.

Yours very truly,

J. B. JAMES.

My boat will be down to-day, and will no doubt deliver the 100 barrels ordered, at Erie pier, Long Dock, this P. M.

After this contract had been concluded, the plaintiff negotiated for the privilege of taking 5,000 barrels of cement more, and the defendant, in answer, wrote a letter, dated 24th July, 1865, put in evidence by the plaintiff as follows:

OFFICE OF J. B. JAMES,     ⎫
ROSENDALE CEMENT WORKS, No. 29 Cedar street, ⎬
NEW YORK, *July* 24, 1865.     ⎭

C. H. O'Neill has (hereby) the privilege extended to him of taking five thousand (5,000) barrels of cement in addition to the 5,000 agreed upon heretofore, and upon the same terms and conditions. This agreement, however, not to be binding in case of accidents to the works of the undersigned, so that it cannot be manufactured.

The only acceptance of the offer in this letter of the defendant by the plaintiff was by a letter dated September 9, 1865, as follows:

JERSEY CITY, *September* 9, 1865.

J. B. JAMES, *New York:*

DEAR SIR.—You will please let your first cement boat down stop at Erie railway pier, and land 100 barrels. I expect more orders at same pier by the time the boat arrives. Also, ship from same boat to the cathedral, Brooklyn, 400 to 500 barrels. If you send me bills of the last cement landed and not settled for, I will send a check for same.

You may enter my order for the acceptance of your offer (till October 1st, time given to conclude on), for the 10,000 barrels cement, to commence from date of first lot to Brooklyn.         Yours, etc.,

C. H. O'NEILL.

The defendant commenced delivering the cement in July. The plaintiff would take the cement offered as it suited his convenience. If it did not suit the plaintiff's convenience to receive it when offered, the defendant's agent would dispose of it elsewhere, with plaintiff's assent, and in some cases the defendant would request the plaintiff to allow him to fill an order elsewhere with the cement brought down, which was done.

In this mode of delivery to suit mutual convenience, the plaintiff received 7,749 barrels; but he did not receive the whole of the first 5,000 barrels until about the 14th of October.

The further receipt of the 2,769 barrels of cement delivered thereafter by defendant in lots, included a lot of 979 barrels received by plaintiff 2d of November, which was the last he received, and was short of the additional 5,000, which the defendant had offered him the privilege of taking by 2,231 barrels.

The plaintiff demanded a delivery of this 2,231 barrels some time in the latter part of November or about the 1st of December, 1865; and the defendant then refused to deliver, on the ground that 1st of November had passed, and he was not obliged to deliver it.

There was no evidence of any call or demand by the plaintiff for cement to which he was entitled on or before the 1st of November, which had been refused or not delivered.

And there was no evidence of any notice, reasonable or otherwise, by the plaintiff to the defendant, that he would require or would take any greater number of barrels of cement than were delivered to him, nor any demand of the balance claimed in the complaint at any time on or before the 1st of November.

The plaintiff gave no evidence that he was ready and willing to pay in cash or note for the cement prior to the 1st day of November, that being the day conceded by the plaintiff in his complaint as the time for completing the contract.

The defendant moved to dismiss the complaint, when the plaintiff rested, and again when the testimony was closed, on the ground that an acceptance by the plaintiff of the defendant's offer in his letter of July 24th, to the plaintiff, after the contract for the first 5,000 barrels of cement had been concluded, of the privilege of taking 5,000 barrels of cement, in addition to the 5,000 barrels agreed upon before, imposed no obligation upon the plaintiff to take the additional 5,000, and consequently the defendant was not bound to deliver the additional 5,000 barrels of cement, and no binding contract was therefore proved as to the additional 5,000 barrels. Also, on the ground that there was no evidence of any demand and refusal to deliver any number of barrels during

the time contemplated by any agreement, and therefore no breach shown.

These motions were denied, and the defendant excepted.

The court ruled that there was no question to be submitted to the jury except as to the amount of damages. To which ruling defendant excepted.

Defendant's counsel requested the court to charge the jury as follows:

1. An agreement on the part of the defendant after the contract for the first 5,000 barrels of cement had been concluded, that the plaintiff should have the privilege of taking 5,000 more barrels of cement on the same terms and conditions, although accepted or assented to by the plaintiff, but without obligating himself to take the 5,000 additional barrels, would not be a valid contract, and would be void for want of mutuality.

The court refused so to charge, and defendant's counsel excepted.

2. The offer by the defendant to the plaintiff of lots of cement from time to time during the running of the contract, when the plaintiff should have received the same, but which the plaintiff was unwilling to take by reason of its being inconvenient for him to do so, if the plaintiff or his agent could effect a sale to other parties, and the sale thereof to other parties by the defendant at the request of the plaintiff, would discharge the plaintiff from any obligation to take, and the defendant from any obligation to again tender or deliver the quantities of cement so tendered and sold on the plaintiff's request.

The court refused so to charge, and defendant's counsel excepted.

*Lyman Tremain*, for the appellant, that upon the exception to the judge's charge that there was no question for the jury except the amount of damages, the defendant is at liberty to raise not only the specific questions presented at the trial, but any other which show that the jury might have found

for the defendant, cited *Sheldon* v. *Ins. Co.* (26 N. Y. R., 460); *Beekman* v. *Jacks* (55 Barb., 468); *Cook* v. *N. Y. C. R. R.* (3 Keyes, 476); *People* v. *Roe* (1 Hill, 460); *Foote* v. *Wiswall* (14 J. R., 304); *People* v. *Rathbone* (21 Wend., 509; 17 id., 257).

That the plaintiff's letter of September 9th was no acceptance and imposed no obligation upon the plaintiff, and that therefore there was no contract binding upon the defendant, there being no mutuality, he cited *Burnet* v. *Bisco* (4 John., 235); *Tucker* v. *Wood* (12 John. R., 190); *Cook* v. *Oxley* (3 T. R., 653); *Roscorla* v. *Thomas* (3 Ad. & Ell. N. S., 234).

That there must be a demand within the time by the plaintiff, he cited *Ld. Abinger, Radford* v. *Smith* (3 Mees. & Wels., 258); *Topping* v. *Root* (5 Cow., 404, 406).

*Samuel Hand*, for the respondent.

RAPALLO, J. The memorandum signed by the defendant under date of July 24, 1865, whereby he extended to the plaintiff the privilege of taking 5,000 barrels of cement in addition to the 5,000 agreed upon theretofore, and upon the same terms and conditions, was in substance an offer on the part of the defendant to sell to the plaintiff the additional 5,000 barrels on the same terms and conditions as those upon which the first lot was sold, thus giving the plaintiff the option to increase his purchase to 10,000 barrels.

The defendant's letter of September 9, 1865, in which he says to the plaintiff: "You may enter my order for the acceptance of your offer (till October, 1st, time given to conclude on) for the 10,000 barrels of cement, to commence from date of first lot to Brooklyn," was a sufficient acceptance of the defendant's offer. The words "till October, 1st, time given to conclude on," indicate an understanding on the part of the defendant, that he had been given until October 1st, to conclude whether or not he would avail himself of the privilege. They do not detract from the force of the accep-

tance, or indicate that the matter was to be left any longer in suspense. They simply amount to a reminder that the acceptance is sent within the time given.

Upon the acceptance of the offer, a valid contract arose, binding upon both parties. The position assumed by the defendant, that this acceptance was merely an expression of willingness on the part of the plaintiff to have the privilege of taking the cement, and did not bind him to take it, is wholly untenable. It was the exercise of the privilege itself.

The motion for a nonsuit on the ground that no contract had been proved, was, therefore, properly denied.

The second ground of motion for a nonsuit was, that there was no proof of a demand by the plaintiff, within the time contemplated by the contract.

The agreement as to time was contained in the letters, which constitute the contract for the first 5,000 barrels. The plaintiff, by his letter of July 12, 1865, agreed that he would take them all, on or before the 1st of November. The defendant, by his reply of July, 13th, agreed to furnish them between then and the 1st of November. They were to be delivered in lots of about 400 barrels each, every week or two a lot.

The second 5,000 barrels were sold on the same terms, and conditions as the first. But the agreement for the second 5,000 barrels not having been perfected by the acceptance of the order, until September 9, 1865, it is evident that they could not all be delivered without either increasing the lots, or enlarging the time.

The evidence further showed, that during the running of the contract, various lots, which might have been delivered under the contract, were by mutual consent delivered to other parties, thus further increasing the time required, and it appeared in the defendant's evidence, that in some instances these diversions were made at his request. It also appeared that the last delivery was made on the 2d of November.

These facts are sufficient to show that time was not regarded as material, and was waived.

But further, the defendant had until the 1st of November to complete the delivery. So long as he made the weekly deliveries, the plaintiff had no right to demand more until the expiration of the stipulated time. If the defendant desired to foreclose the plaintiff from demanding a delivery after that time, he should have tendered the number of barrels remaining undelivered. No such tender was made.

The motion for a nonsuit on the ground of a want of demand, before the 1st of November, was properly denied.

The request to charge the jury as to the effect of accepting a privilege, without becoming bound to take, was a purely hypothetical and abstract proposition, which could have no application to this case, and was properly refused.

The offer and the acceptance were both in writing; there could be no dispute therefore as to the language used, and whether or not it constituted a valid contract was a question of law, and was properly decided by the court.

The second request to charge was also properly refused. The court was called upon to instruct the jury as matter of law, that as to the lots which had been by mutual consent and for mutual accommodation disposed of by the defendant, instead of being delivered under the contract, the defendant was discharged. There was nothing in the nature of the transaction which would justify such a conclusion. It is not pretended that the plaintiff refused to take these lots. In some instances, it was more convenient for him not to take them at the particular time, and the defendant disposed of them elsewhere. In other cases, it was not convenient for the defendant to deliver them at the time, and the plaintiff consented to yield his claim to an immediate delivery. Nothing but a postponement of the deliveries seems to have been contemplated. The defendant on the trial did not even ask to have the question submitted to the jury, as to what was intended; but, treating the question as one of law, claimed a positive instruction, and the court rightly refused to give such instruction.

The only remaining exception is, to the ruling of the court that there was no question to be submitted to the jury, except the question of damages.

It is difficult to find any other question of fact in the case, proper to have been submitted to the jury; but if there were, the defendant was bound to call the attention of the court to it.

The defendant rested his defence upon the grounds, that there was no contract, no demand within the time stipulated for delivery, and that the defendant was discharged as to certain lots of the cement in question; and he called upon the court to rule upon these matters as questions of law arising upon undisputed facts.

In such a case, if the defendant desired to raise any further question, and submit it to the jury, he was bound to specify it, in order to render his exception available. (*Winchell* v. *Hicks*, 18 N. Y., 558; *Mallory* v. *Tioga R. R. Co.*, 5 Abb. N. S., 420; *Seymour* v. *Cowing*, 1 Keyes., 532; *Jencks* v. *Smith*, 1 Comst., 92.)

The judgment should be affirmed, with costs.

All the judges concurring, judgment affirmed.