HENRY COLLINS et al., Respondents, *v.* JOHN BURNS et al., Appellants.

| 63 | 1 |
|-----|-----|
| 110 | 181 |

Certain goods were shipped on board defendants' steamer at Liverpool, consigned to plaintiffs at Jersey City, under bills of lading containing this clause: " The goods to be taken from alongside by the consignee immediately the vessel is ready to discharge, or otherwise they will be deposited at the expense of the consignee, and at his risk of fire, loss or injury, in the warehouse provided for that purpose on the steamship wharf," etc. Upon arrival of the steamer the consignees were notified of her readiness to discharge; they obtained and furnished the necessary permit for the landing of the goods, but did not remove them, and they were deposited upon the designated wharf, which was inclosed, and was the warehouse designated. It was under control of defendants, and at the gate was stationed a delivery clerk, who took receipts for goods, and without whose consent goods could not be removed. The goods were called for by a cartman not authorized to receive them, who receipted for and was allowed to remove them. In an action to recover for their loss, *held*, that the goods at the time of delivery were in the custody of the defendants as warehousemen; that the clause in the bill of lading did not excuse them from their obligations as such ; and that they were liable.

*The Santee* (7 Blatchf., 186) distinguished.

(Argued September 22, 1875; decided October 5, 1875.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order overruling defendants' exceptions and directing judgment upon a verdict.

This action was brought to recover damages for the alleged non-delivery of four cases of merchandise delivered to defendants at Liverpool to be transported to Jersey City.

The evidence showed the delivery of the goods to defendants at Liverpool consigned to plaintiffs. The bill of lading therefor contained this clause: "The goods to be taken from alongside by the consignee immediately the vessel is ready to discharge, or otherwise they will be landed by the master and deposited at the expense of the consignee, and at his risk of fire, loss or injury, in the warehouse provided for that purpose on the steamship wharf at Jersey City, or sent to the public store, as the collector of the port of New York shall direct, and when deposited in the warehouse to be subject to storage, the collector for the port being hereby authorized to grant a general order for discharge immediately after entry of the ship." The steamer Java, by which the goods were shipped, arrived at Jersey City, August 11, 1869. The consignees (plaintiffs),were notified of her readiness to discharge. They paid the duty, and obtained and furnished to the steamer the necessary permit for the landing of the goods. They were landed by defendants upon the wharf designated in the bill of lading. This was inclosed and used as a warehouse, and was the one mentioned in said bill, and was under the control of defendants. There was a gate at the entrance, where was stationed a delivery clerk, who examined and took the marks upon goods being removed, and took receipts from the cartmen. Evidence was given that this clerk ordinarily, where a cartman was not known, required an order from the owner, and that upon some occasions he refused permission to remove goods without authority being shown. On the sixteenth August plaintiffs' cartman called for the goods, but they could not be found. Upon examination it appeared that on the fourteenth the goods were taken away by a cartman, who called

for them, giving their numbers, stating he was sent for them, and who signed the usual receipt.

Defendants' counsel requested the court to charge, among other things, that their liability as carriers was ended by a deposit of the goods in the warehouse; that while there they were by the bill of lading at plaintiffs' risk of loss by theft, and defendants were not responsible for allowing them to be taken without a written order; and also that the court direct a verdict for defendants. These requests were denied, and defendants' counsel excepted. Exceptions were ordered to be heard at first instance at General Term.

*D. D. Lord* for the appellants. The taking of the receipt by defendants did not impose any liability upon them. (*The Santee*, 2 Ben., 519; 7 Blatchf., 186.)

*A. J. Vanderpoel* for the respondents. Defendants having been guilty of negligence in delivering the goods, are liable for their loss. (*Gleadell* v. *Thompson*, 10 Alb. L. J., 332; 56 N. Y., 194; 35 Sup. Ct., 232; *Mitchell* v. *L. and J. R. R. Co.*, 10 Q. B., 259; *The Santee*, 2 Ben., 519; 7 Blatchf., 186, 188.) Defendants are *prima facie* liable for the goods to plaintiffs. (*Lichtenheim* v. *B. and P. R. R. Co.*, 11 Cush., 70; *M. and M. R. Co.* v. *Fairchild*, 6 Wis., 403; *The Saragossa*, 2 Ben., 544.) They were bound to deliver the goods to plaintiffs. (*Gibson* v. *Culver*, 17 Wend., 305.) The landing of the goods upon the dock was not a delivery to plaintiffs. (*Ostrander* v. *Brown*, 15 J. R., 42; *Redmond* v. *L., N. Y. and Phila. Stbt. Co.*, 46 N. Y., 578; *McAndrews* v. *Whitlock*, 52 id., 40.) The delivery to the wrong person did not protect defendants. (*Ostrander* v. *Brown*, 15 J. R., 39; Story on Bailm , 545, *b; Powell* v. *Myers*, 26 Wend., 591; 2 Gil. Ev. [Redf. ed.], § 642; *Willard* v. *Bridge*, 4 Barb., 361; *Price* v. *S. and O. R. R. Co.*, 50 N. Y., 213; *Mitchell* v. *L. and J. R. Co.*, L. R., 10 Q. B., 259; *Steinweg* v. *Erie Co.*, 43 N. Y., 123; *Christenson* v. *Am. Ex. Co.*, 15 Minn., 270; 2 Am. L. R., 122, 125; *Reynolds* v. *Com. F.*

*Ins. Co.*, 47 N. Y., 597 ; *Corning* v. *McCullough*, 1 id., 47 ; *Coffin* v. *Reynolds*, 37 id., 640 ; *State* v. *McGary*, 21 Wis., 496.) It was the duty of the court to direct a verdict for plaintiffs. (*Bk. of Utica* v. *Bender*, 21 Wend., 644 ; *Cumpston* v. *McNair*, 1 id., 457.)

Rapallo, J. The claim of the plaintiffs to recover in this action for the missing packages of goods is founded upon the well established rule that a warehouseman is responsible for a loss arising from a negligent delivery of property in his charge, to a person not authorized by the party for whom it is stored to receive it.

The defendants dispute in the first place that they stood in the position of warehousemen in respect to the property in question. The facts established upon the trial bearing upon this question were that the cases of goods in controversy were shipped on board the steamer of the defendants at Liverpool, consigned to the plaintiffs at Jersey City, under bills of lading containing the following clause :

"The goods to be taken from alongside by the consignee immediately the vessel is ready to discharge, or otherwise they will be deposited at the expense of the consignee, and at his risk of fire, loss or injury, in the warehouse provided for that purpose on the steamship wharf at Jersey City, or sent to the public store, as the collector of the port of New York shall direct, and when deposited in the warehouse to be subject to storage, the collector of the port being hereby authorized to grant a general order for discharge immediately after entry of the ship."

The ship arrived at her port of destination on the 11th of August, 1869. The consignees of the goods were notified of her readiness to discharge, and obtained and furnished to the ship the necessary permit for the landing of the goods, but did not remove them, and they were placed by the defendants upon the designated wharf, which was the warehouse mentioned in the bill of lading. It was inclosed, having openings for the reception of goods from the vessel,

and a gate, through which carts had to pass in removing the goods. At this gate there was stationed a delivery clerk, who examined each load, and took the marks of the packages removed and a receipt from each carman for the goods removed by him. It sufficiently appears in the case that goods could not be removed without the consent of this delivery clerk, and that on some occasions the cartmen had been refused permission to remove goods without exhibiting their authority.

It thus appears that the goods placed upon this wharf or warehouse were under the control of the defendants or their servants. In their bill of lading the defendants call this place of deposit a warehouse, and reserve the right to charge storage. This seems to us sufficient to establish that the goods were in the custody of the defendants as warehouse-men, and unless there is some language in the bill of lading exempting the defendants from such liability it would seem quite clear that they held the goods under the ordinary responsibility which attaches to warehousemen for want of proper care, etc., and especially for a negligent misdelivery.

The words relied upon as establishing such exemption are " that the goods will be deposited at the expense of the consignee, and at his risk of fire, loss or injury, in the warehouse provided for that purpose," etc.

The learned counsel for the defendants has argued with much earnestness that these words were sufficient to exempt the defendants from loss arising from the removal of the goods from the wharf by an unauthorized person. That they had the effect of imposing upon the plaintiffs the risk of loss from such a cause, and relieved the defendants from the obligation which would attach to an ordinary warehouseman, of watching and taking care of the goods and examining into the authority of any person who might assume to be entitled to take them away; and he cites the case of *The Santee* (7 Blatchf., 186) as sustaining his position. He also refers to the evidence in relation to the usual course of business at the wharf in question, and contends that it was customary to

allow any cartman coming for goods to take them on giving his receipt to the delivery clerk, and that the act of the clerk in allowing the goods to pass on receiving such receipt was not a delivery.

The case of *The Santee* does not, in my judgment, sustain the position claimed. The language of the bill of lading in that case, and the facts, differed widely from those now before us. The place where the goods were landed was not a warehouse, nor was it so denominated by the parties. It appears to have been an ordinary wharf. The stipulation in the bill of lading was in the following words: " It is expressly understood that the articles named in this bill of lading shall be at the risk of the owner, shipper or consignee thereof, as soon as delivered from the tackles of the steamer at the port of destination, and they shall be received either at New York or Brooklyn by the consignee thereof, package by package, as so delivered; and if not taken away the same day by him, they may (at the option of the steamer's agents) be sent to a store, or permitted to lay where landed at the expense and risk of the aforesaid owner, shipper or consignee."

Under this bill of lading the goods were landed at a wharf after notice to the consignee, who attended the delivery, and were subsequently taken away by an unauthorized person, without any agency or interference of the carrier. It was held that the carrier, after having delivered the goods from the ship's tackles and given to the consignee an opportunity to take charge of them, was not bound to watch them. The goods when thus deposited on the wharf, after notice, were not in the custody of the carrier as warehouseman. The stipulation in the present case was not that the goods might be permitted to lie, at the risk of the consignee, on the wharf where they might be landed, but that if not removed at the time of discharge they should be deposited in the warehouse provided for that purpose, and when so deposited should be subject to storage. In the case of *The Santee*, the carrier assumed none of the responsibilities of a warehouseman, and reserved no right to compensation therefor; and yet in that

case the learned judge who delivered the opinion expressly guarded his decision from misconstruction by stating that, even under the circumstances before him, the carrier would be responsible if he or his servants, through negligence, made actual delivery of the goods to a person not authorized to receive them.

In the case now under consideration, the defendants, occupying, as has been shown, the position of warehousemen, voluntarily and without inquiry, and without knowing the person who removed the goods, permitted him to pass their gate with the goods on his cart, taking his receipt for them. This approaches as nearly as can be an actual delivery to such person. By allowing him to pass, on taking his receipt, they consented to his removal of the goods. The case presents none of the features of a theft from a bailee, so far as his liability is concerned. Even a theft is no excuse to the bailee, if resulting from a want of proper care on his part.

Here the bailee or his agent had full control of the goods and opportunity to satisfy himself as to the authority of the person undertaking to remove them, and yet allowed them to pass without question, or any knowledge upon the subject.

Whether it would have been a defence to show that such was the usual course of business at this warehouse, it is not necessary to consider. The evidence fails to establish that such was the uniform custom, or that the plaintiffs knew of any such custom. It was in evidence that on other occasions the delivery clerk had refused to allow goods to pass without a proper order when the person attempting to take them was unknown to him. No request was made to submit any question of fact to the jury. Both parties requested the court to dispose of the case upon the assumption that questions of law only were involved. It cannot, therefore, now be claimed that there was error in not submitting the case to the jury. (*O'Neill* v. *James*, 43 N. Y., 84.)

We think that the court, under the circumstances, ruled correctly in directing a verdict for the plaintiffs. The controlling question was the construction of the bill of lading.

The stipulation which it contained did not, in our judgment, exempt the defendants from responsibility as warehousemen, nor from a loss arising from their own negligence; and the evidence was, we think, sufficient to establish negligence on their part in allowing the goods to be taken from their custody by a stranger without any knowledge or inquiry as to his authority to take them.

The judgment should be affirmed.

All concur.

Judgment affirmed.