WILLIAM J. TRIMBLE, as Assignee of EUGENE T. CURTIS et al., for the Benefit of Creditors, Respondent, v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

1. RAILROAD — LIABILITY FOR LOSS OF TRUNK CONTAINING MERCHANDISE — NOTICE THAT IT CONTAINS GOODS, NOT BAGGAGE, A QUESTION OF FACT. A railroad company is liable to the assignee of a commercial firm for the loss of a trunk containing merchandise in charge of its traveling salesman, and which is checked as baggage upon one of its passenger trains, in an action upon an independent agreement for its transportation as freight, when the company has notice through its agent that it contains goods and not baggage — and this may be given by other means than the direct statement of the salesman, when he seeks to check it, that the trunk contains merchandise, as it may be inferred from the facts surrounding the transaction which are properly submitted to the jury or to the trial court upon the question.

2. FAILURE OF BAGGAGEMAN TO COMPLY WITH RULE REQUIRING RELEASE FROM LIABILITY. When with notice that a trunk contains merchandise, the baggageman of a railroad company, contrary to one of its rules, which is unknown to the salesman, checks it as baggage without exacting a release from liability, the company will not be relieved from responsibility for its loss as freight, as the baggageman stands in the place of the company and it is bound by his acts.

3. DIRECTION OF VERDICT. Where, after a nonsuit has been denied at the close of the whole case, the counsel for the plaintiff states that he is willing to leave it to the court, and the defendant's counsel, upon being interrogated by the court, says he has no question to submit to the jury, but that he "stands on" his motion for a nonsuit, the legal effect is the same as if both counsel had requested the court to direct a verdict; and where a verdict has been directed in favor of the plaintiff, although the defendant excepted thereto, all the controverted facts and all inferences in support of the judgment entered thereon will be deemed conclusively established in his favor.

*Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 39 App. Div. 403, affirmed.

(Argued January 17, 1900; decided February 27, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 23, 1899, upon an order overruling the defendant's exceptions, directed to be heard at the Appellate Division in the first instance, and directing judgment for the plaintiff on a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert H. Harris* for appellant.    The defendant was not liable for the loss of the samples, and the plaintiff should have been nonsuited.    (*Talcott* v. *W. R. R. Co.*, 159 N. Y. 461; *Sloman* v. *G. W. Ry. Co.*, 67 N. Y. 208; *Cahill* v. *L. & N. Ry. Co.*, 10 C. B. [N. S.] 154; *Becker* v. *G. E. Ry. Co.*, L. R. [5 Q. B.] 241; *G. N. R. Co.* v. *Shepherd*, 8 Exch. 30; *B. & B. M. Ry. Co.* v. *Keys*, 9 H. L. Cas. 555; *Lee* v. *G. T. Ry. Co.*, 36 U. C. Q. B. 350; *Macrow* v. *G. W. Ry.*, L. R. [6 Q. B.] 612; *Blumantle* v. *F. R. R. Co.*, 127 Mass. 322; *Alling* v. *B. & A. R. R. Co.*, 126 Mass. 121.)    Under the contract for passage the defendant is not liable for damage to this trunk.    (*Gurney* v. *G. T. Ry. Co.*, 37 N. Y. S. R. 155; 138 N. Y. 638; *O. C. Bank* v. *Brown*, 9 Wend. 116; *Hawkins* v. *Hoffman*, 6 Hill, 586.)

*David Hays* for respondent.    The defendant having received the trunk, with notice that it contained property other than the personal baggage of the passenger, and having charged and received extra compensation for its transportation, it is liable for its loss.    (*Smith* v. *Weston*, 159 N. Y. 194; *Adams* v. *R. L. Co.*, 159 N. Y. 176; *Sloman* v. *G. W. Ry. Co.*, 67 N. Y. 208; *Talcott* v. *W. R. R. Co.*, 159 N. Y. 461; 4 Elliott on Railroads, § 1649; Hutchinson on Carriers, § 269; Lawson on Bailments, § 284; *Rathbone* v. *N. Y. C. & H. R. R. R. Co.*, 140 N. Y. 48; *L. S. & M. S. Ry. Co.* v. *Foster*, 104 Ind. 293.)    It is no defense that the property destroyed was not the property of the plaintiff.    (*Talcott* v. *W. R. R. Co.*, 159 N. Y. 461; *Sloman* v. *G. W. Ry. Co.*, 67 N. Y. 208; *Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 73 N. Y. 167.)    The defendant is liable on the ground of negligence. (*Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 73 N. Y. 167; *Canfield* v. *B. & O. R. R.*, 93 N. Y. 532; *Catlin* v. *Adirondack Co.*, 11 Abb. [N. C.] 377; *Curtis* v. *D., L. & W. R. R. Co.*, 74 N. Y. 116; *Wheeler* v. *O. S. N. Co.*, 125 N. Y. 155; *Meux* v. *G. E. R. R. Co.*, L. R. [2 Q. B. 1895] 387.)    The

limitation contained in the passenger ticket does not affect the plaintiff's right to recover. (*Perkins* v. *N. Y. C. R. R. Co.,* 24 N. Y. 196; *Blossom* v. *Dodd,* 43 N. Y. 264; *Mynard* v. *S., B. & N. R. R. Co.,* 71 N. Y. 180; *Rathbone* v. *N. Y. C. & H. R. R. R. Co.,* 140 N. Y. 48.)

BARTLETT, J. This action is brought to recover the value of a trunk and its contents destroyed while in the possession of the defendant, to which it had been delivered by the plaintiff's assignors for transportation from Rochester to New York on the evening of October 23d, 1897.

Curtis & Wheeler were manufacturers of shoes in the city of Rochester, and Joseph E. Taylor acted as their traveling salesman on the 23d day of October, 1897, and had been in their employ in that capacity for a period of nine years. On the evening in question, Taylor, acting for his employers, went from Rochester to New York on business; before starting he arranged with the baggageman of the defendant for the transportation of a trunk and an article called a "telescope;" the trunk and its contents, consisting of samples of shoes, belonged to Curtis & Wheeler, except a few articles of wearing apparel, the property of Taylor, for which no claim is made. The telescope contained the wearing apparel of Taylor.

For the trunk Taylor received from the baggageman a card known as " Excess Baggage Check," for which he paid eighty-five cents excess of baggage; for the telescope he received the ordinary metallic check. Taylor described the trunk, when a witness at the trial, as a regular sample trunk, made of wood and covered with canvas; about 32 or 34 inches in height, 36 to 38 inches in length and 22 to 24 inches in width.

The " number taker " of the Rochester baggageroom was sworn, and stated that he took a record of the baggage in and out; he produced a sheet containing a record covering October 23d, 1897, which showed the description of plaintiff's baggage as a sample trunk; he further testified that he so designated it from its appearance.

Taylor testified that he had been in the habit of leaving Rochester with his samples on an average of four, six or eight times a year for about twelve years. The night checkman was sworn for defendant and stated that he did know what the contents of the trunk were, and that nothing was said to him as to the contents. He was asked on cross-examination if he remembered anything about this particular trunk or its appearance; he answered, " I couldn't just now, no."

It is to be observed that this witness was not asked by defendant's counsel whether he recognized this piece of baggage as a sample trunk from its external appearance; he does not contradict the number taker as to the external appearance of the baggage showing it was a sample trunk.

The defendant does not question receiving the trunk, or the failure to deliver it, but insists it is not liable for its loss with contents, for the reason that Taylor when paying for excess of baggage on the trunk failed to inform the checkman that it contained samples.

The learned counsel for the defendant very frankly states in his brief that it is true the trunk was what is commonly known as a sample trunk and had the appearance of one, but, nevertheless, argues that the plaintiff should have been nonsuited.

The liability of common carriers for the loss of sample trunks carried by commercial travelers in the transaction of their business has been frequently considered by the courts of this and other jurisdictions during the last twenty-five years, and, while the decisions are conflicting, many of them are distinguishable in their facts from the case at bar.

The law relating to this subject has been in a state of evolution, and certain rules have finally been laid down in this state calculated to protect the rights of both parties, in view of the fact that a vast amount of the wholesale business of the country is transacted through commercial travelers to the great profit of the railroad companies and convenience of merchants.

As this case is in the position where each party is to be regarded as having requested the direction of a verdict (a

point we will discuss later), and the trial judge having directed a verdict for the plaintiff, all the controverted facts and all inferences in support of the judgment will be deemed conclusively established in his favor.

The defendant read in evidence certain rules of the company which provide in brief that baggage consists only of necessary wearing apparel limited to 150 pounds in weight; that sample baggage of not more than 150 pounds will be checked free for one person, regardless of the number or kind of tickets presented.

Rule 4 reads as follows : " Small cases or trunks containing merchandise will be carried as an accommodation to commercial travelers and may be checked when release of liability, Form 220, is signed in consideration of its transportation on passenger trains as baggage.  In case personal baggage and samples are contained in same trunk, a release must be signed for samples, and agents will refuse to check the same unless this is done."

The release referred to absolves the company from all liability for loss, detention or damage to the trunk or its contents.

It is urged on behalf of the defendant that rule 4 limited the authority of the baggageman, and that he was unauthorized to check a sample trunk without exacting the release. This court has held that the baggage agent stands in the place of the railroad company (*Talcott* v. *Wabash R. R. Co.*, 159 N. Y. 471), and the record in the case before us shows that no release was exacted, nor was plaintiff's agent aware of the rule.

The plaintiff's agent testified that he had on a number of occasions signed this release when he desired to stop at several stations between Rochester and New York, as he could settle for excess of baggage through to New York for less than to pay this excess from each station at which he stopped.

On cross-examination he was asked : " Q. I ask you if you did not know the fact that when the baggagemaster knew that your trunk contained samples, or any other traveling man's

trunk contained samples, that this release of liability was executed? A. No, sir; I had no knowledge of that. I knew that I had from time to time executed those releases on my sample baggage."

On re-direct examination he was asked : " Q. When you say that you had executed those releases, you refer to the releases which you described before, in order to save paying excess of baggage from each place when you departed ? A. Yes, sir. No release was presented to me, nor did I sign any release, nor was I asked to, when I checked this trunk in controversy."

The defendant's checkman, or baggage master, does not deny this statement.

This case presents the question whether the baggageman of the defendant, who checked the lost trunk and collected excess of baggage thereon, knew that it was a commercial traveler's trunk from surrounding facts and circumstances, and that defendant was thus chargeable with notice.

This court has held that notice may be given to the common carrier by other means than the direct statement of the owner that he is a commercial traveler, and that his trunk contains samples.

In *Sloman* v. *Great Western Ry. Co.* (67 N. Y. 208) plaintiff's son, a lad of eighteen years of age, was employed by him as traveling agent to sell goods by sample. He had two large trunks containing the samples, different from ordinary traveling trunks, and had a valise for his personal baggage. He delivered the trunks to a baggage master at a railroad depot and when asked to which station he wished them checked, replied that he did not then know, as he had sent a dispatch to a customer at a certain place to know if he wanted any goods; if not, he desired them to go to a certain other place, where he expected to meet customers. Soon after he checked his baggage and paid two dollars for extra weight.

Judge Ｒᴀᴘᴀʟʟᴏ, in his opinion, said : " It does not appear that it was stated, in terms, to the baggage master what the trunks contained, but the jury had the right to consider the

surrounding circumstances, the appearance of the passenger and of the articles, the conversation between the passenger and the baggage master, and the dealing between them, and if they indicated that the trunks were not ordinary baggage, or received or treated as such, the jury had the right to draw the inference of notice, and that they were received as freight."

In *Talcott* v. *Wabash R. R. Co.* (159 N. Y. 461) it appeared that when weighing the trunks the agent of the company observed " they weighed light," and the traveler replied, " Yes, they contain samples of underwear."

Judge VANN, referring to this incident, in the opinion of the court, at page 471, said : " The number and appearance of the trunks was some evidence that they contained merchandise, and the agent was expressly told that they contained samples. In view of the custom proved, that commercial travelers generally carry samples belonging to their employers in their trunks, this warranted the inference that the baggage agent knew the exact facts."

It the case at bar there were facts warranting the submission of the question to the jury, or the trial judge, as to whether defendant was charged with knowledge of the character of the trunk through its agent; the external appearance of a regular sample trunk ; the readiness with which it was recognized, as such, by the official " number taker ; " the fact that defendant was constantly checking sample trunks on all of its passenger trains except the Empire State Express; the further fact that for about twelve years plaintiff's agent had been traveling on defendant's road with a sample trunk and leaving Rochester six or eight times a year; the fact that sample trunks were checked for the same compensation as ordinary baggage — these and any other relevant facts were properly considered when the verdict was directed, and the facts warranted by the evidence stand conclusively established in favor of the plaintiff.

While it is doubtless the better practice, as suggested by defendant's counsel, that a traveler in charge of a sample trunk should state to the baggage agent the fact when he

seeks to check it, yet if in the haste of transacting such business, or where by many repetitions of the act, much is taken for granted, this is not done, it would be a harsh and unreasonable rule that precluded the plaintiff from submitting to the jury the facts surrounding the transaction.

The recovery in this case was not on the contract of passage entered into when the plaintiff's agent purchased his ticket, but on an independent agreement for the transportation of the sample trunk as freight.

In *Sloman* v. *Great Western Ry. Co.* (67 N. Y. at page 214), Judge Rapallo said : " From all the circumstances, the jury were, we think, authorized to draw the inference that the baggage master understood that the agent was traveling for the purpose of selling goods, and that these trunks contained his wares; that he was not entitled to have them carried as his ordinary baggage and therefore the extra charge was made, and they were carried as freight." In *Talcott* v. *Wabash R. R. Co.* (159 N. Y. at page 470) this case was cited and followed.

The *Sloman* case also authorizes a recovery by a plaintiff where this independent contract is made by his salesman as agent. (p. 212.)

There remains to be considered one other question. The learned Appellate Division in its opinion stated, in substance, that as neither counsel raised the point that there were any questions of fact to be submitted to the jury, the effect was to establish the facts, if any there were, in favor of the plaintiff.

As the correctness of the practice at the trial is challenged, we will consider the question.

At the conclusion of the evidence the defendant's counsel moved for a nonsuit upon various grounds stated by him, which motion was denied. He then asked the court : " What question will your honor submit to the jury ? " To this the court inquired : " What question do you desire to submit to the jury ? " To which the defendant's counsel answered : " I do not desire to have any question submitted to the jury."

Thereupon the plaintiff's counsel stated that he was willing to leave it to the court, to which the defendant's counsel answered: " I stand on my motion for a nonsuit, of course." The plaintiff's counsel then asked for a direction of a verdict, which was objected to by the defendant's counsel, but was granted by the court. A verdict was directed and an excep-·tion taken by the defendant. Neither party asked to have any question of fact submitted to the jury.

In the case of *Adams* v. *Roscoe Lumber Co.* (159 N. Y. 176), O'BRIEN, J., in delivering the opinion of the court, says: " The court directed a verdict in favor of the plaintiffs for the value of the lumber, with damages for its detention, and the defendant excepted. The request by both parties for the direction of a verdict amounted to a submission of the whole case to the trial judge, and his decision upon the facts has the same effect as if the jury had found a verdict in the plaintiffs' favor after submitting the case to them. Under these circumstances the judgment is conclusive with respect to the two facts upon which the right of action depended." To the same effect is the case of *Smith* v. *Weston* (159 N. Y. 194); *Thompson* v. *Simpson* (128 N. Y. 270, 283), and *Koehler* v. *Adler* (78 N. Y. 287).

It is contended, however, that as the defendant asked for a nonsuit instead of a directed verdict, the foregoing cases have no application. It must be borne in mind that in this case, after the denial of his motion for a nonsuit, the defendant's counsel asked the court what question his honor would submit to the jury, and that the court then inquired of ·him what question he wanted submitted, and he answered that he did not desire any question submitted to the jury.

In the case of *Barnes* v. *Perine* (12 N. Y. 18), after the evidence had closed, the counsel for the defendant moved for a nonsuit. The motion was denied and the defendant excepted. The court thereupon, at the request of the plaintiff, directed a verdict in his favor. ALLEN, J., in delivering the opinion of the court, said : " If the defendant supposed that there was a disputed question of fact, material to the issue between the

parties, he should have made a distinct request that it should be submitted to the jury. But having treated the questions as purely legal, and acquiesced in the disposal of them by the court as such, he cannot now be heard to object that facts were involved which should have been decided by the jury."

In *Winchell* v. *Hicks* (18 N. Y. 558) the motion was also for a nonsult at the conclusion of the evidence, which was denied and a verdict directed in favor of the plaintiff. In that case it was held that the defendant, moving at the conclusion of the evidence for a nonsuit, which is denied, if he desires that questions of fact be submitted to the jury, must distinctly request it and cannot upon appeal make the point under a general exception to the judge's direction of a verdict.

In the case of *O'Neill* v. *James* (43 N. Y. 84) there was a motion for a nonsuit, which was denied and the jury directed to find a verdict in favor of the plaintiff for the amount of the damages sustained. It was held that where a party, upon the trial, rests his case upon certain positions which he calls upon the court to rule in his favor as questions of law arising upon undisputed facts, if he also desires that any question of fact in the case be submitted to the jury, he must make a motion to that effect. In the absence of this his mere exception to the ruling of the judge that there is no question for the jury is unavailing. (See, also, *Ormes* v. *Dauchy*, 82 N. Y. 443; *Dillon* v. *Cockcroft*, 90 N. Y. 649.)

In the case of *Stone* v. *Flower* (47 N. Y. 566) the trial court directed the jury to find a verdict for the defendant. The plaintiff, however, had not waived his right to have the questions of fact involved in the case submitted to the jury by any motion on his part for such a direction; and it was held that he was entitled to have his exception, taken to the direction of a verdict, reviewed, but Grover, J., in delivering the opinion of the court, refers with approval to. *Barnes* v. *Perine*, *Winchell* v. *Hicks* and *O'Neill* v. *James*, above cited, and distinguishes the case under consideration by him from the rule adopted in those cases. In *Clemence* v. *City*

*of Auburn* (66 N. Y. 334), and in *Pratt* v. *D. H. M. F. Ins. Co.* (130 N. Y. 212), relied upon as supporting a different rule, there was no waiver by the appellant by motion to direct a verdict or for a nonsuit.

The cases cited of *Dwight* v. *Germania Life Ins. Co.* (103 N. Y. 341); *Bagley* v. *Bowe* (105 N. Y. 171); *Bulger* v. *Rosa* (119 N. Y. 459), have no application to the case at bar, as here the proceedings at the close of the trial were, in legal effect, a request by both counsel for a directed verdict.

The judgment and order appealed from should be affirmed, with costs.

O'BRIEN, J. (dissenting). This was an action by the assignee of a commercial firm for the loss of a trunk which was carried by the traveling salesman of the firm and was lost by the defendant. This trunk contained sample merchandise of the character in which the firm dealt, and was put upon one of the defendant's trains by direction of the salesman, who was a passenger from Rochester to New York, on the 23rd day of October, 1897. The salesman purchased a passage ticket on the defendant's road from Rochester to New York, which contained the following limitation : "In consideration of extended time within which journey may be begun, holder hereof releases R. R. Co. from all liability as to baggage, except for wearing apparel, not exceeding in value one hundred dollars." The salesman procured the trunk to be delivered at the railroad station and checked as baggage, paying eighty-five cents for excessive weight. By the defendant's rules a passenger is entitled to have carried free one hundred and fifty pounds of personal baggage, and by this rule baggage consists only of wearing apparel and such personal effects as may be necessary for the use and comfort of the passenger while traveling. Baggage in excess of that amount was to be paid for. The rule also provides that sample cases or trunks containing merchandise will be carried as an accommodation to commercial travelers and may be checked when a release from liability is signed in consideration of its trans-

portation on passenger trains as baggage; and in case personal baggage and samples of merchandise are contained in the same trunk, a release must be signed for the samples, and agents are directed to refuse to check the same unless this is done. The baggagemen by this rule are directed to refuse to check baggage that does not consist strictly of personal effects unless this release is properly filled out and signed by the owner or the agent of the owner. The form of this release appears in this case, and by its terms the company is discharged from all liability for baggage whether the same arises from careless- ness or negligence however gross on the part of the company, or its agents or servants, or from any cause whatever.

It appears that the salesman, who had the trunk in question, had on previous occasions signed these releases, though he stated that he never read them; but that there was no release signed on the occasion of the delivery of the trunk in ques- tion, nor did he make known to any of the servants of the company its contents, and there is no evidence in the case to show that the defendant, or any of its servants, on this or any other occasion knew the fact that the trunk carried by this salesman contained merchandise, except as that fact was to be inferred from its appearance.

It appears that the salesman had been in the employ of the firm for about twelve years, and during that time had been a passenger upon the defendant's road, but whether the trunk in question had ever been seen prior to the occasion in question by any of the defendant's agents or servants at Rochester does not appear. The claim for damages for the loss of the trunk was assigned by the firm to the plaintiff. These are the undis- puted facts that appear in the record, and the question is whether the plaintiff was entitled to recover.

At the close of the proofs the defendant's counsel made a motion for a nonsuit on the ground, among others, that there was no evidence that the defendant had any knowledge that the trunk contained merchandise, and that there was no proof of a contract to carry a trunk containing merchandise on a passenger train, and that inasmuch as the trunk did not con-

tain baggage there could be no recovery. The motion was denied and the defendant excepted. The defendant's counsel then asked the court what question he proposed to submit to the jury. The court then asked the defendant's counsel what question *he* desired to submit to the jury, and the counsel replied that he did not desire to have any question submitted. The plaintiff's counsel then stated that he proposed to leave the case to the court, if the defendant's counsel was willing. The defendant's counsel did not accept this offer, but stated explicitly that he proposed to stand on his motion for a non-suit. The plaintiff's counsel then asked the court to direct a verdict in his favor for the value of the trunk and contents, being five hundred and forty-two dollars and ten cents, and thirty-five dollars interest. The defendant's counsel objected to the direction of a verdict for the plaintiff, and made a special objection to the allowance of interest, but these objections were overruled. The court then directed a verdict in favor of the plaintiff for five hundred and seventy-seven dollars and ten cents, and to this direction the defendant's counsel excepted. The questions of law presented by the record are, therefore, before this court for review.

The plaintiff cannot recover in this case unless he established a contract, express or implied, on the part of the defendant to carry merchandise for the salesman on a passenger train. It is not and cannot be claimed that there was any express contract creating the relations of a common carrier of goods between the salesman and the defendant. The only express contract made is represented by the passenger ticket sold to the salesman, and that was a contract to carry him as a passenger, with his personal baggage. But it turned out that what he had in the trunk was goods, and not baggage, which, under the defendant's rules, it did not carry on passenger trains, except in cases where the owner or passenger signed a release for any claim for damages in case of loss from any cause whatever. So that the salesman caused the trunk in question to be placed on a passenger train without any express contract on the part of the defendant to carry or be responsible

for it.  Moreover, the defendant contends that the salesman caused the trunk to be placed upon the defendant's passenger train, against its rules, *as baggage,* when, in fact, it was not baggage, but goods.

There is but one ground upon which the defendant can lawfully be required to respond for the loss of the trunk and its contents, and that is in case it received and checked the same upon the train with knowledge of the fact that it contained goods instead of baggage.  When a passenger who desires to have goods carried with him on a passenger train gives notice of that fact to the carrier, and the latter has notice of the fact in any way, and then receives and checks the trunk containing the goods, the relation of carrier and shipper is created by the transaction with all its duties and responsibilities.  (*Sloman* v. *Great Western Railway Co.,* 67 N. Y. 208; *Stoneman* v. *Erie Ry. Co.,* 52 N. Y. 429.)

But in the absence of proof showing, or tending to show, knowledge of the contents of the trunk or package by the carrier in such cases, there can be no recovery, and such knowledge cannot be inferred from the appearance of the trunk or package containing the goods.  (*Humphreys* v. *Perry,* 148 U. S. 627; *Gurney* v. *Grand Trunk Ry. Co.,* 37 N. Y. S. R. 155; affd., on opinion below, 138 N. Y. 638; *Cahill* v. *L. & N. Railway Co.,* 10 C. B. [N. S.] 154; affd., 13 C. B. [N. S.] 818; *Blumantle* v. *Fitchburg R. R. Co.,* 127 Mass. 322; *Alling* v. *B. & A. R. R. Co.,* 126 Mass. 121.)

The case, therefore, is solved by a very simple inquiry, and that is, whether there is in the record anything showing, or tending to show, that the defendant had knowledge of the contents of the trunk in question when it received and checked it upon the train on the 23rd of October, 1897, other than the appearance of the same, which, it is held, is no evidence of knowledge at all.  I confess I am unable to find any.  It is said that the salesman was traveling, as such, for twelve years, but it does not appear that at any time he notified the defendant of the contents of the trunk, or that the defendant at any time acquired the knowledge in any other way, so that the

13

case stands upon the transaction when the trunk was shipped
for the last time.    A fact or circumstance that in itself proves
nothing is not made any stronger when multiplied by twelve
or any larger number.    In my opinion there was no proof in
the case to warrant a finding that the defendant had notice or
any knowledge of the fact that the trunk in question con-
tained goods instead of baggage.

But the learned trial judge evidently thought otherwise,
and it distinctly appears from the opinion of the learned court
below that reviewed the case on appeal, that it held that
whether the defendant had or had not such notice or knowl-
edge was a disputed question of fact.    Grant, for the sake of
the argument, that this view is correct, still, the disputed fact
was not found by the jury and the action was one at law tri-
able by jury.    Either party had the constitutional right to
have the facts determined by the jury.    The learned court
below held that the disputed fact necessary to support the plain-
tiff's case was found by the court without the aid of the jury,
and that it had the right to take the question from the jury
and decide it itself.    This is an obvious error, since the doc-
trine upon which it is based would go far to destroy the right
of trial by jury altogether.    If sustained by this court, all
that will be necessary hereafter when the plaintiff in an action
at law has given proof of some fact or circumstance, which
no one claims is conclusive in support of an issue of fact, is
to request the trial judge to direct a verdict in his favor; and
if such a direction is given against the defendant's objection
and exception, still the disputed and necessary fact is to be
deemed found by the court.    The defendant could not be
deprived of the right of a jury trial without its consent.    It
gave no such consent, nor did its counsel in any way waive
the right.    He moved for a nonsuit and excepted to the denial
of his motion.    He told the court that *he* had no question to
submit to the jury, and obviously he had none from his view
of the case, since he had just contended in his motion for a
nonsuit that there was no case for the jury, as there was no
proof that the defendant had knowledge of the contents of

the trunk.  He told the court that he stood upon his motion for a nonsuit, and objected and excepted to the direction. How, under such circumstances, he consented to have the facts found by the court, or waived his rights to have them found by the jury, it is impossible to conceive.  The defendant's counsel did not need any finding and did not want any finding.  All he asked was that his client should be left alone.  When his motion for a nonsuit was denied, and he concluded to stand upon that, he had no interest in anything else that took place.  But it was quite different with the plaintiff.  Before he could have judgment in his favor, it was necessary that the important fact in dispute should be found in his favor, and it was his business to procure the finding in the proper way.  The defendant's counsel could remain silent and let the plaintiff try his side of the case.  The plaintiff's counsel should then have gone to the jury and asked them to find the disputed fact, which was an essential part of his case, and which the other side was not interested in at all.  When he asked and accepted the direction of a verdict in his favor by the court, he asked and accepted what he was not entitled to.  The learned counsel for the plaintiff cites two cases to show that this practice is correct.  (*Smith* v. *Weston,* 159 N. Y. 194; *Adams* v. *Roscoe Lumber Co.,* Id. 176.)  They have no application to the question here, since it appears that they are cases where both sides asked the court to direct a verdict.  All the parties may by such a request clothe the court with power to decide all the questions in the case, but it has never been held that *one* party could do it against the protest of the other.  It is safe to say that no authority can be found to justify the practice followed in this case, and it has been often condemned in this court. The rule that governs the question has been thus stated in this court more than once:  " In a case triable by a jury, the direction of a verdict is only justified where the evidence *conclusively* establishes the right of the party in whose favor it is made." (*Bulger* v. *Rosa,* 119 N. Y. 459; *Bagley* v. *Bowe,* 105 N. Y. 171; *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y.

341.) It is not necessary for the party against whom a verdict is directed upon evidence not conclusive to show that he requested to have the case sent to the jury. (*Stone* v. *Flower*, 47 N. Y. 566; *Clemence* v. *City of Auburn*, 66 N. Y. 334; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 212.) It would indeed be a rule of practice bordering on the absurd that would require a defendant in a case where a fact is in dispute, in order to preserve his right to have the fact found by the jury, to assert by such a request that there *is* evidence tending to prove the plaintiff's case, when upon a motion for a nonsuit just denied, he contended that there was *no* evidence whatever. He may preserve his rights by an exception to the direction of a verdict and without taking two positions before the court so manifestly inconsistent.

It is only necessary to add that if there is in this record any evidence at all of knowledge by the defendant of the contents of the trunk, no one ventures to assert that it was conclusive.

The judgment should be reversed and a new trial granted, costs to abide the event.

HAIGHT, MARTIN and VANN, JJ., concur, with BARTLETT, J., for affirmance.

PARKER, Ch. J., concurs with O'BRIEN, J., for reversal.

LANDON, J., dissents upon the ground that defendant, having, notwithstanding the denial of its motion for a nonsuit, objected to a direction of a verdict, the court should have submitted the facts to the jury.

Judgment and order affirmed.