PETER E. FARNUM, Appellant, *v.* LEWIS E. CARR and STEPHEN ST. JOHN, Respondents.

*Bills and notes — oral evidence to show that the makers were not to be held liable thereon — objection that a question should have been submitted to the jury — not heard in the first instance on appeal.*

The administrators of one Charles St. John, who had made in his lifetime certain promissory notes, which neither the administrators nor the indorser thereof were able to pay at maturity, delivered to a bank which held the notes renewal notes made by the administrators and indorsed by the same indorser, which were subsequently paid in part by a dividend of forty per cent declared out of the estate of the decedent and the balance thereof by the indorser.

In an action by the indorser to recover from the administrators the balance of the notes paid by him, it was

*Held,* that the defendants were entitled to show by parol evidence that the notes in suit were given in pursuance of a parol agreement between the plaintiff, the defendants, as administrators, and the bank, that in consideration thereof the bank would carry the original notes until a dividend could be paid from the estate of the decedent, and that any balance due on the original notes after such a dividend would be paid by the plaintiff to the bank, and that the arrangement should involve no liability on the part of the defendants to the plaintiff or to the bank.

*Semble,* that the plaintiff was entitled to testify that there was no conversation between him and one of the defendants relative to the arrangement in question.

Where, at the close of a jury trial, the court, both parties having moved for a judgment, dismisses the complaint and the plaintiff excepts to this disposition of the case, but makes no request for the submission of any question to the jury, he cannot, for the first time upon appeal, raise the objection that the court erred in not submitting a certain question of fact to the jury.

APPEAL by the plaintiff, Peter E. Farnum, from that part of a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Orange on the 18th day of June, 1901, upon the dismissal of the complaint by direction of the court after a trial at the Orange Trial Term, which dismissed the complaint as to the defendant St. John.

*Thomas Darlington,* for the appellant.

*Lewis E. Carr, Lewis E. Carr, Jr.,* and *Raymond W. Carr,* for the respondents.

JENKS, J. :

This appeal is limited to the action of the trial court at the close of the evidence in dismissing the case against the defendant St. John. The testimony adduced by the defendants showed that Charles St. John died intestate on July 6, 1891, leaving an embarrassed estate. At this time the National Bank of Port Jervis held three notes for $1,500, $3,000 and $3,500 respectively, which it had theretofore discounted for him. The plaintiff was indorser on the notes. The first note, which fell due on July third, went to protest, and the plaintiff became charged as such indorser. The bank could not carry the dishonored paper. On July eleventh the defendants became administrators of St. John's estate. The plaintiff at that time was under heavy money obligations. After July eleventh, and before July fifteenth, the matter of the note past due was taken up, and after the plaintiff had stated that he was unable to pay or to carry these notes, the plaintiff, the defendants, as administrators, and the bank made this agreement, namely : The defendants, as administrators, would make their notes to the order of the plaintiff in an amount equal to the said notes of the intestate, the plaintiff would indorse them and the bank would accept them, and thereupon would carry the original notes until a dividend could be paid from the estate of St. John. If any balance were due on the original notes after such dividend it would be paid by the plaintiff to the bank. The testimony of the defendants also showed that the sole purpose of the agreement was to induce the bank to carry the original notes which the plaintiff then could not provide for and which the estate in its involved condition could not meet, and that it was clearly understood that the arrangement should involve no liability of the defendants to the plaintiff or to the bank. It was further agreed at the time that the administrators would pay on renewals amounts equal to the discounts, which amounts the bank would charge against its claim upon the old notes. Thereafter, and on July fifteenth, the cashier of the bank made out a note for $4,500, being the aggregate of the note for $1,500 which had become due on July third and the note for $3,000 due on the following day, and, by process of average, dated the said note July eleventh. A memorandum showing the transaction was indorsed on the note, the plaintiff indorsed

his name thereunder, and the defendants "as administrators" signed it. A similar course was taken when the original note for $3,500 fell due, save that the defendant St. John signed Carr's name as well as his own, and the subsequent renewal notes were thus signed. The notes in suit are the last of a series of renewals. In December, 1897, in proceedings in the Surrogate's Court upon the estate of the intestate, a dividend of forty per cent was declared. The bank received its dividend and credited it upon the indebtedness of the intestate which included the original notes, and thereafter exacted the balance of the original notes from the plaintiff.

On the other hand, the plaintiff denied that he entered into any such agreement, and now contends that he was entitled to go to the jury upon the question whether he was ever a party thereto. But the record shows that his learned counsel, at the close of the evidence, admitted that the case against Carr had failed, but that he asked for judgment against the other defendant. Thereupon, the defendants moved for a dismissal of the complaint against Carr, and also against St. John. The court then took the case, and dismissed it as to the defendant Carr, and nonsuited as to St. John. The plaintiff excepted after this action, but did not make a request at any time for the submission of any question to the jury. I think that the plaintiff is precluded by the record from now raising the question that the court erred in not submitting any question to the jury. (*Barnes* v. *Perine*, 12 N. Y. 18; *Winchell* v. *Hicks*, 18 id. 558; *O'Neill* v. *James*, 43 id. 84; cases cited in *Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 id. 84.)

I think that the learned court did not err in admitting the oral testimony of this alleged agreement between the defendants, the plaintiff and the bank. (*Higgins* v. *Ridgway*, 153 N. Y. 130.) The distinction made in *Seymour* v. *Cowing* (4 Abb. Ct. App. Dec. 201), one of the authorities cited in *Higgins* v. *Ridgway* (*supra*), is that such evidence does not alter or vary the contract, but it prevents a delivery which, unqualified, would give instant effect to the agreement from being of any other or greater effect than that contemplated.

It is also contended that the court erred in excluding the testimony of the plaintiff that there was no conversation had between him and the defendant Carr relative to the arrangement in ques-

tion. Such evidence certainly was admissible. (*Becker* v. *Koch*, 104 N. Y. 394.) But the record shows that the plaintiff was asked whether the conversation ever took place, whereupon he answered, "Not one word." Objection was then made on the ground that the question was incompetent and improper in that the plaintiff could not contradict his own witness. Then the question is repeated in a more comprehensive form, and the same objection was made. But the witness again answered, "None whatever." The court said : " You voluntarily took the risk of his testimony being unfavorable to you ; objection sustained." Plaintiff excepted. If the objection had excluded the conversation I think that the ruling would have been serious error, but the record shows that the evidence was admitted before the ruling was made, and it does not appear that the court struck it out. Moreover, it appeared that the witness shortly thereafter gave testimony which, in its plain effect, was a denial that he had ever had any conversation with Carr.

I cannot see that the plaintiff was prejudiced by the exclusion of the receipts indorsed on the notes. St. John had previously testified that they represented money paid by the order of the surrogate (which was shown to be forty per cent) ; that the receipt was signed by Scott, who was cashier of the bank, but that he knew nothing of it. Thus there was no question that the payment had been made, and, on the other hand, there was nothing that connected either defendant with such indorsement. None of the other questions raised requires comment.

The judgments should be affirmed, with costs.

All concurred.

Judgments affirmed, with costs.