ing such policy, with the written consent of the husband." The main question in this case is whether the written transfer from the husband to Comstock was in effect a written consent to the transfer from the wife to Comstock, within the meaning of the statute? The statute does not state in what manner the consent shall be given. It does not require that the husband shall join in the transfer. If he in fact does join him with the wife in a written assignment, that is a sufficient consent to meet the requirements of the statute. Anderson v. Goldsmidt, 103 N. Y. 617, 9 N. E. 495. In the case cited the form of the assignment executed by the husband and wife was: "We, Barbara and Joseph Goldsmidt, * * .* hereby assign, sell, set over, and deliver to said John Anderson all our right, title, and interest in and to said policy." So that, if the husband and wife join in transferring all their right, title, and interest in the policy, that is enough. The husband, by a transfer of his interest, does not in terms consent that the wife may transfer her interest; but the act is such that, as said in the Anderson Case, the purpose of the statute is thereby fully answered.

In the present case, the assignment of the husband is separate from that of the wife. It is, however, part of the same transaction, and executed and delivered at the same time, as that of the wife. Upon the paper upon which both assignments are written there first appears a description of the policy and a statement of the premiums paid, and each assignment refers to this description,—the one by the expression "the above described policy," and the other by the expression "the foregoing policy." These assignments, being part of one and the same transaction, should be read together; and, if so, they are, together, just as forceful as the assignment in the Anderson Case, and answer just as fully the purpose of the statute. Upon the face of the papers the husband received from Comstock substantially the full value of the policy. He intended, if honest, that Comstock should have an operative transfer. So that, if the intent of the husband is the test, his transfer should be construed to be a written consent. The logic of the Anderson Case leads directly, I think, to the conclusion that there is here a sufficient written consent. The Anderson Case is not overruled or limited by the case of Dannhauser v. Wallenstein, 169 N. Y. 199, 62 N. E. 160. The cases of Slocomb v. Ray, 123 N. C. 571, 31 S. E. 829, 68 Am. St. Rep. 830, and Davidson v. Cox, 112 Ala. 510, 20 South. 500, cited by the counsel for plaintiff, involved the construction of statutes unlike the one applicable to this case.

It follows that the defendant is entitled to the fund. Findings or decision in short form may be submitted.

Argued before McLENNAN, SPRING, WILLIAMS, and DAVY, JJ.

McGowan & Stolz, for appellant.
Fowler & Crouch, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of MERWIN, J., delivered at special term.

(?9 Misc. Rep. 443.)
### TALCOTT v. WABASH R. CO.
(Supreme Court, Trial Term, New York County. December, 1902.)

1. CARRIERS—EXCESS BAGGAGE—CONTRACT—COMMERCIAL TRAVELER.
Where a commercial traveler pays the proper excess baggage rates on trunks containing, among other things, his employer's goods, and the agent checks the trunks to the traveler's destination, and gives him a voucher for the excess payment, the carrier is bound to his employer, as an undisclosed principal, for the transportation of the goods.

2. SAME—LOSS—ACTION FOR DAMAGES.
Where a traveling man had four trunks, and in them was property belonging to various principals, and all the trunks were delivered to a

carrier, and while in transit on a connecting line a fire occurred, by which three of the trunks were destroyed, and the trunks were not separately weighed, but were charged for in bulk, and in one of the trunks were the personal belongings of the traveling man, there was insufficient evidence on which to base an action for damages on the part of one of the principals.

Action by James Talcott against the Wabash Railroad Company. Complaint dismissed.

Bunnell & Bunnell (Charles E. Hughes, of counsel), for plaintiff.

George F. Brownell (George F. Brownell and C. V. Nellany, of counsel), for defendant.

FITZGERALD, J.   It is unnecessary to make any detailed statement of the facts as disclosed by the testimony submitted herein for the reason that they are fully set forth in the opinion of the learned court above.   Talcott v. Railroad Co., 159 N. Y. 461, 54 N. E. 1. But one question outside of the subject of damages remains to be determined: What, in fact, was the contract entered into by plaintiff's agent with defendant for the transportation of the excess weight of the material carried in trunks for which extra charges were made and paid?   Plaintiff's agent purchased from defendant for his own use a passage ticket, which entitled him to carry a limited amount of baggage free.   Baggage in excess of this limit might be carried upon payment of an extra charge.   The passenger in this case was a commercial traveler in plaintiff's employ, and it appears to be customary with railway companies to carry in the ordinary baggage cars accompanying passenger trains trunks containing samples of the various lines of stock the sale of which the commercial agent is engaged in, and it has been held that he may, by an independent contract, bind the railway company to his employer for the transportation of such property entirely independent of the ordinary agreement which usually arises from the purchase of a passage ticket for the carrying of the passenger's personal effects.   Millard v. Railroad Co., 86 N. Y. 441.   The law is well settled that a railway company which sells a passage ticket giving the right of travel from one place to another, but which ticket clearly indicates by coupon or otherwise that the journey to be made extends beyond its own terminus, and is to be continued over connecting lines, acts, in so far as the sale of the ticket is concerned, merely as the agent of the connecting line, and is not responsible for baggage further than to transfer it safely to the custody and care of its principal.   Milnor v. Railroad Co., 53 N. Y. 363; Kessler v. Railroad Co., 61 N. Y. 538.   The passenger in this instance had with him four trunks; and in these trunks property was contained belonging to various parties.   Part of said property belonged to plaintiff, part to the New Britain Knitting Company, part to the American Hosiery Company, and the remainder consisted of personal effects.   All of the trunks were safely delivered by defendant company at the terminus of its line at Detroit to the Grand Trunk Railway, and while in transit over this latter line a fire occurred by which three of the four trunks were destroyed.   A voluntary nonsuit was submitted to upon the trial on the causes of action set-

ting forth the loss of the property belonging to the New Britain Knitting Company and the American Hosiery Company, and it is res adjudicata in this case that defendant was not liable for the loss of the passenger's personal effects. Talcott v. Railroad Co., supra. Is it liable for the loss of plaintiff's property? The answer to this question depends on the terms of the second contract. What was the consideration paid, and what was it, as understood and agreed between the parties, that was to be done? Assuming that the payment of $16 constituted the consideration for which all of the excess weight was carried, the property so paid for belonged to different owners. It was charged for in bulk. The trunks were not separately weighed. One was subsequently returned, but there is no evidence of its weight. One of those lost belonged to the knitting and the hosiery companies, and its weight is equally unascertainable. For aught shown to the contrary, the entire extra charge may have been paid for the goods contained in these two trunks; but, to add to this confusion, it appears from the record that the passenger's personal effects weighed only 50 pounds, and that testimony conclusively establishes the fact that he was permitted to carry 100 pounds of some of these various other owners' property free upon his ticket. Upon no possible theory could defendant be held liable for the loss of goods to the extent of this 100 pounds. I have eliminated the purchase, possession, and presentation of the ticket by the passenger at the time of the shipment of the trunks as constituting any part of the consideration for which excess weight was carried; but must not the terms and conditions of that ticket be considered at least as evidence tending to establish what was in his mind when the second agreement was made? Did he not desire to take all the trunks upon the train on which he was personally traveling? Were not the limitations as to the risks assumed annexed to his coupon ticket present before him when making the second contract? Do not the marks upon the pasteboard check and brass checks given him by the baggage agent show that the trunks were to go beyond the terminus of defendant's line, and upon the lines of other railway companies; and would it not be unreasonable to hold, in view of all these facts, that two distinct and different propositions were mutually simultaneously present in the minds of the contracting parties,—one a contract upon the ticket, limited as to defendant's liability by its terminus at Detroit, and the other a contract binding the defendant for the excess covering the entire journey from Chicago to New York? No matter how these matters may be viewed, it would be utterly impossible, for the reasons previously shown, to arrive at any accurate measure of damages, and plaintiff's complaint must be dismissed.

Complaint dismissed.